T.C. Memo. 2019-61

UNITED STATES TAX COURT

JOHN E. ROGERS AND FRANCES L. ROGERS, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 30586-09,   1052-12,          Filed May 30, 2019.
                15682-13, 30482-13,
                20910-14.

        <u>John E. Rogers</u>, for petitioners.

        <u>Craig Connell</u>, <u>Bernard J. Audet, Jr.</u>, <u>Thomas A. Deamus</u>, <u>Frederick Petrino</u>,

<u>Mayah Solh-Cade</u>, and <u>Briseyda Villalpando</u>, for respondent in docket Nos.

30586-09, 1052-12, 15682-13, 30482-13, and 20910-14.

        <u>Elizabeth A. Carlson</u> and <u>Mayer Y. Silber</u>, for respondent in docket No.

20910-14.

_____

        [1]The following cases are consolidated herewith:  John E. Rogers and
Frances L. Rogers, docket Nos. 1052-12, 15682-13, and 30482-13; and Frances L.
Rogers, docket No. 20910-14.

**[*2]**         MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  On April 17, 2018, the Court issued an opinion in these consolidated cases, Rogers v. Commissioner (Rogers 2018), T.C. Memo. 2018-53, redetermining tax liabilities.  We held Mr. Rogers not liable for a civil fraud penalty for 2006 and reserved for subsequent disposition petitioners' liability for accuracy-related penalties under sections 6662(a) and (h) and 6662A[2] for 2005 through 2007 and 2009.

On December 27, 2017, the Court ordered respondent to address the effect of section 6751(b) on these cases and to advise us of any supervisory approvals that were in the record, on the basis of our decision in Graev v. Commissioner (Graev III), 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016).  We also set a deadline for the parties to file any motions addressing the application of section 6751(b).  In response, petitioners filed a motion for partial summary judgment as to the penalties, and respondent filed a motion to reopen the record to offer evidence of section 6751(b) compliance.  The Court

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** denied petitioners' motion and granted respondent's motion, and supplemental trial was held.

The issues for consideration are: (1) whether petitioner Frances Rogers can challenge respondent's noncompliance with section 6751(b) in her claim for relief from joint and several liability under section 6015 (innocent spouse relief); we hold she may not; and (2) whether petitioners are liable for accuracy-related penalties under sections 6662(a) and (h) and 6662A; we hold them liable to the extent stated herein.

FINDINGS OF FACT

We made findings of fact in Rogers 2018 relevant for purposes of determining petitioners' liability for the penalties at issue except with respect to respondent's section 6751(b) compliance.[3] We briefly summarize them here for context. Mr. Rogers is an attorney and a certified public accountant (C.P.A.) with over 30 years of experience as a tax professional. During 2005 through 2008 he was a partner at a major international law firm and implemented a sophisticated tax shelter using distressed asset transactions (DAT). Mrs. Rogers is also highly educated. She is a retired teacher and principal. She has master's and law

---

[3]Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulations of facts, with the accompanying exhibits, are incorporated herein.

**[*4]** degrees. She took an active role in petitioners' real estate activities and Mr. Rogers' law firm during 2009 when Mr. Rogers was hospitalized for a prolonged period.

Petitioners litigated their tax liability for 2003, and we held them liable for tax and a section 6662(a) accuracy-related penalty, which they paid. Rogers v. Commissioner, T.C. Memo. 2011-277, aff'd, 728 F.3d 673 (7th Cir. 2013). Mrs. Rogers sought a refund of the 2003 payments in a claim for innocent spouse relief. We held that the doctrine of res judicata bars Mrs. Rogers' claim for innocent spouse relief because she meaningfully participated in the litigation over 2003 and she is not otherwise entitled to equitable relief. Rogers 2018, at *98-*100. Petitioners also owed and paid tax and penalties for 2003 resulting from the decision in a partnership-level case, Superior Trading, LLC v. Commissioner, 137 T.C. 70 (2011), supplemented by T.C. Memo. 2012-110, aff'd, 728 F.3d 676 (7th Cir. 2013). Respondent assessed the resulting penalties related to the partnership item adjustments against petitioners through a computational adjustment, which petitioners paid.

For 2005 and 2006 we disallowed deductions relating to trusts that Mrs. Rogers' wholly owned S corporation Sterling Ridge, Inc. (SRI), and Mr. Rogers, respectively, used to invest in a tax shelter involving DAT (DAT adjustments)

**[*5]** described in Kenna Trading, LLC v. Commissioner, 143 T.C. 322, 364-372 (2014), aff'd sub num. Sugarloaf Fund, LLC v. Commissioner, 911 F.3d 854 (7th Cir. 2018). The Court found that the tax shelter investors' adjusted bases in the distressed assets were zero. Id. at 364-365. For 2005 SRI claimed a DAT deduction that overstated its basis in the distressed assets by approximately 30 times; for 2006 Mr. Rogers claimed a deduction of approximately 50 times his basis. In Rogers 2018 we also held that petitioners failed to report income generally relating to Mr. Rogers' promotion and implementation of the DAT tax shelter that he received as trustee's fees or deposits into the bank account of Portfolio Properties, Inc. (PPI). We also disallowed business expense deductions related to Mr. Rogers' tax shelter promotion activities.

With respect to SRI, we held that Mrs. Rogers' transfer of real estate to SRI in 2004 was properly characterized as a capital contribution rather than a sale as reported for tax purposes. As a result, SRI overstated its basis in the subdivided residential lots of the real estate, underreported its income on sales of the lots for 2005 and 2006, and claimed excessive amounts as cost of goods sold (COGS) for 2005 and 2006.

We also disallowed a substantial amount of business expense deductions on petitioners' Schedules C, Profit or Loss From Business, and the S corporation

[*6] returns for SRI, PPI, and Lucas & Rogers, Inc. (L&R). Petitioners failed to substantiate the amount or business purpose of a significant portion of the expenses. They deducted large amounts of their own and their adult son's personal living expenses (often deducting 100% of the expenses incurred) including alarm services, utilities, insurance, taxes, landscaping, repairs on their residences, automobile expenses, interest charges on credit cards, club dues, travel, car rental, and meals. They failed to maintain contemporaneous logs of their travel expenses. They improperly deducted reimbursable travel expenses related to Mr. Rogers' employment and travel expenses for Mrs. Rogers to accompany her husband. The excessive amounts of claimed deductions resulted in petitioners' reporting insignificant amounts and even negative taxable income for 2005 through 2008 despite Mr. Rogers' substantial compensation as an attorney. For 2005 and 2006 PPI deducted over $3.4 million in business expenses; excluding amounts conceded by respondent, over 85% of the amounts claimed were disallowed. Petitioners used PPI to pay the expenses relating to Mr. Rogers' tax promotion activities and an unrelated failing business that Mr. Rogers partially owned and whose expenses they improperly deducted.

Petitioners presented voluminous records of their expenses including QuickBooks records, canceled checks, credit card statements, and in some cases

[*7] receipts and invoices. The records were disorganized, included many duplicates, and often did not reconcile with each other or with the amounts deducted. For some expenses petitioners did not provide any records. They used their credit cards for personal and business reasons, did not maintain adequate records to distinguish the expenses as personal or business, and deducted the entire amount of the interest charges. They often intermingled the finances of their businesses and reported inconsistent tax treatment of transactions between their businesses, e.g., one company deducted a payment but the recipient did not report the income.

A.    2005 Tax Year Penalties

The 2005 tax year involved audits of petitioners' joint return and returns for three S corporations: L&R, SRI, and PPI. Three revenue agents examined the returns: (1) Revenue Agent Susan White (RA White), L&R; (2) Revenue Agent Ann Pappas (RA Pappas), SRI; and (3) Revenue Agent Raymond Tabor (RA Tabor), the Rogerses and PPI. RA Tabor prepared a revenue agent's report that included RA White's and RA Pappas' determinations. Louis M. Olivieri was each revenue agent's acting immediate supervisor.

**[\*8]**  1.    Penalties Determined in Notice of Deficiency

For L&R, RA White disallowed certain business expense deductions (L&R adjustments) and proposed to impose a section 6662(a) underpayment penalty. She prepared a penalty consideration form with attached workpapers asserting penalties for negligence under section 6662(b)(1), a substantial understatement of income tax under section 6662(b)(2), and a substantial valuation misstatement under section 6662(b)(3).  On August 9, 2009, Mr. Olivieri signed the penalty consideration form approving the penalties proposed by RA White.

For SRI, RA Pappas disallowed SRI's DAT deduction and certain business expense deductions (2005 SRI adjustments).  She proposed to impose underpayment penalties under section 6662(h), the gross valuation misstatement penalty, for the DAT adjustment and section 6662(a) for negligence, a substantial understatement of income tax, and a substantial valuation misstatement for the 2005 SRI adjustments.  She prepared a penalty consideration form with attached workpapers asserting these penalties.  On August 28, 2009, Mr. Olivieri signed the penalty consideration form approving the penalties proposed by RA Pappas.

RA Tabor determined that PPI had unreported income, disallowed numerous business expense deductions on petitioners' Schedules C and PPI's S corporation return (2005 other adjustments), and proposed to impose a section

[*9] 6662(a) underpayment penalty for a substantial understatement of income tax. On or before August 28, 2009, he prepared a revenue agent's report that included RA White's and RA Pappas' proposed determinations. However, the revenue agent's report did not provide the specific subsections for the section 6662 penalties that RA White and RA Pappas proposed. In his workpapers, RA Tabors listed "section 6662" penalties of $907,260; that amount included a section 6662(h) 40% penalty for the DAT adjustment proposed by RA Pappas and a section 6662(a) 20% penalty for the L&R adjustments proposed by RA White and the 2005 SRI adjustment proposed by RA Pappas. Worksheets attached to the revenue agent's report contained omissions and errors with respect to the specifics of RA White's and RA Pappas' proposed penalties that raise questions concerning the approval process.[4] We find these errors immaterial as Mr. Olivieri separately approved RA White's and RA Pappas' proposed penalties when he executed their penalty consideration forms.

---

[4]In his revenue agent's report, RA Tabor also mislabeled the sec. 6662(h) 40% penalty attributable to the DAT adjustment as sec. 6662(b). He mistakenly indicated that the sec. 6662(a) penalties for the adjustments related to L&R and SRI were under sec. 6662(c), defining negligence, contrary to RA White's and RA Pappas' proposed sec. 6662(a) penalties for negligence, a substantial understatement of income tax, and a substantial valuation misstatement.

[*10] On or before August 28, 2009, RA Tabor prepared Form 3198, Special Handling Notice for Examination Case Processing, also asserting section 6662 penalties of $907,260. Form 3198 labels all penalties as "section 6662" without specifying the applicable subsections. On August 28, 2009, Mr. Olivieri signed the revenue agent's report and Form 3198 approving the penalties that RA Tabor proposed attributable to the unreported income and the 2005 other adjustments.[5]

Attorney Craig Connell reviewed a proposed notice of deficiency and recommended adding a section 6662A penalty for a reportable transaction attributable to SRI's DAT adjustment. The parties stipulated that he made the initial determination to assert the section 6662A penalty. During the period of his review through the litigation of these consolidated cases, Associate Area Counsel Julia Cannarozzi (AAC Cannarozzi) was his immediate supervisor. On September 28 and 29, 2009, AAC Cannarozzi sent several emails to an employee of the Internal Revenue Service (IRS) Technical Services Unit. The parties stipulated that the emails approved Attorney Connell's determination of the section 6662A penalty.

---

[5]As we find that Mr. Olivieri approved the penalties that RA White and RA Pappas proposed when he signed their respective penalty consideration forms, we do not consider whether Mr. Olivieri's execution of the revenue agent's report and RA Tabor's penalty consideration form would also constitute approval for those penalties.

[*11] On September 30, 2009, respondent timely issued a notice of deficiency determining penalties as follows: (1) for SRI's DAT adjustment under sections 6662(h) and 6662A and, alternatively, under section 6662(a) for negligence, a substantial understatement of income tax, and a substantial valuation misstatement; (2) for the 2005 SRI adjustments, negligence, a substantial understatement of income tax, and a substantial valuation misstatement; (3) for the L&R adjustment, negligence, a substantial understatement of income tax, and a substantial valuation misstatement; and (4) for PPI's unreported income and petitioners' 2005 other adjustments, negligence, a substantial understatement of income tax, and a substantial valuation misstatement.

### 2. Penalty Asserted in Pleadings

In an amendment to the answer, respondent asserted for the first time an adjustment to SRI's COGS on the basis of a recharacterization of the land transfer as a capital contribution and a section 6662(a) penalty on the resulting underpayment. Attorney Frederick Petrino, a member of respondent's trial team in these consolidated cases, drafted the amendment to the answer and the accompanying motion for leave to file the amendment to the answer. AAC Cannarozzi was his immediate supervisor. She was also Attorney Connell's supervisor. On July 15, 2015, Attorney Petrino signed a draft of the amendment to

[*12] the answer, and AAC Cannarozzi initialed and dated the draft approving the penalty. On that same date, respondent filed the motion and lodged the amendment to the answer with Attorney Connell's digital signature. On August 11, 2015, the Court granted respondent's motion and filed the amendment to the answer. Attorney Petrino's draft of the amendment to the answer was substantially similar to the version lodged with the Court.

B.     2006 Tax Year Penalties

1.     Penalties Determined in Notice of Deficiency

RA Tabor examined the 2006 returns, assisted by other agents and employees. Mr. Olivieri was RA Tabor's acting immediate supervisor. On March 22, 2013, RA Tabor prepared a revenue agent's report determining unreported income and disallowing a DAT deduction, certain business expense deductions (2006 other adjustments), and SRI's COGS (COGS adjustment). The report addressed both petitioners. RA Tabor found that petitioners acted fraudulently in their failure to report income. The revenue agent's report proposed a fraud penalty of $949,014 on the underpayment attributable to the unreported income and a section 6662 penalty of $725,718 which included a 40% section 6662(h) penalty for the DAT adjustment and a 20% section 6662(a) accuracy-related penalty for the balance of the underpayment. RA Tabor allocated the penalties in this manner

**[\*13]** because the computer program used to prepare the report allowed for the computation of only one penalty for each adjustment. However, he did not determine that petitioners had established that any portion of the underpayment was not attributable to fraud.

Around April 11, 2013, RA Tabor prepared a penalty consideration form asserting fraud and, alternatively, negligence against petitioners. The form does not provide the amounts of the proposed penalties or limit the fraud or negligence penalty to a specific portion of the underpayment. Around that same date, he also prepared Form 3198, asserting a fraud penalty of $949,014 and a section 6662 penalty of $725,718, the same amounts listed in the revenue agent's report.

We find that RA Tabor proposed the negligence penalty, as an alternative to a fraud penalty, on the unreported income, and he proposed the section 6662(h) penalty on the DAT adjustment and the negligence penalty on the COGS and 2006 other adjustments as primary or alternative penalties. For disposition of these cases it not necessary to determine whether RA Tabor proposed these later penalties as primary penalties or as an alternative to the fraud penalty. On April 11 and 12, 2013, Liza F. Valdez, his acting immediate supervisor, signed Form 3198 and the penalty consideration form, respectively, approving the penalties with respect to both petitioners.

[*14] Attorney Connell reviewed a proposed notice of deficiency determining the above penalties to be issued to both petitioners. He recommended in a memorandum to the IRS Technical Services Unit (technical services memo) dated April 26, 2013, issuing a separate notice of deficiency to each petitioner and asserting the fraud penalty only against Mr. Rogers. He also proposed to impose a section 6662A penalty against both petitioners with respect to the DAT adjustment. AAC Cannarozzi was his immediate supervisor during his review of the proposed notice of deficiency and the litigation of these consolidated cases. On April 26, 2013, before issuance of the notices of deficiency, she initialed a copy of the technical services memo approving the section 6662A penalty against each petitioner.

On April 26, 2013, respondent timely issued a notice of deficiency to Mr. Rogers determining a section 6663 fraud penalty on the entire underpayment and alternatively penalties under sections 6662(h) and 6662A on the DAT adjustment and a section 6662(a) accuracy-related penalty for negligence, a substantial understatement of income tax, and a substantial valuation misstatement on the COGS and 2006 other adjustments or alternatively on the entire underpayment. Thus, Mr. Rogers' notice of deficiency determined the negligence penalty against all adjustments as either the primary or the alternative penalty. On the same date

**[*15]** respondent timely issued a notice of deficiency to Mrs. Rogers determining penalties under sections 6662(h) and 6662A for the DAT adjustment and section 6662(a) for negligence, a substantial understatement of income tax, and a substantial valuation misstatement for the COGS and 2006 other adjustments or alternatively on the entire underpayment.

At issue for 2006 against both petitioners are the negligence penalty and the section 6662(h) gross valuation misstatement penalty. Respondent concedes that he did not obtain the required approval for a penalty for a substantial understatement of income tax for either petitioner. He argues that approval of the section 6662(h) gross valuation misstatement penalty by definition constitutes approval for the lesser section 6662(a) penalty for a substantial valuation misstatement. As we find petitioners liable for the gross valuation misstatement and negligence penalties, we do not address this argument.

2.    <u>Penalties Asserted in Pleadings</u>

In the notices of deficiency, respondent disallowed SRI's COGS adjustment on the basis of a lack of substantiation and determined a section 6662(a) penalty on the resulting underpayment. The notices of deficiency did not challenge the tax treatment of Mrs. Rogers' 2004 land transfer to SRI as a sale and did not assert that the transfer was a capital contribution. Attorney Petrino drafted an

[*16] amendment to the answer to the amendment to the petition (amendment to the answer) and a related motion for leave to file alleging that the transfer was a capital contribution and adjusting SRI's COGS on the resale of the subdivided lots. He signed drafts of the documents. However, Attorney Connell digitally signed the amendment to the answer and the motion ultimately lodged with the Court. On July 15, 2015, before its lodging, their supervisor, AAC Cannarozzi, initialed the draft of the amendment to the answer. The draft was substantially similar to the version lodged with the Court.

C.    2007 Tax Year Penalty

Revenue Agent Rick L. Chiaculas (RA Chiaculas) examined petitioners' 2007 joint return and proposed to impose a section 6662(a) underpayment penalty for a substantial understatement of income tax. He prepared a penalty consideration form and a substantial understatement lead sheet asserting the penalty. On October 6, 2011, Robert Smetana, his immediate supervisor, signed the penalty consideration form approving the penalty.[6] He did not sign the lead sheet. On October 14, 2011, respondent timely issued a notice of deficiency determining a section 6662(a) penalty for negligence, a substantial

[6]The parties stipulated that Robert Smetana signed the form. He initialed it in the box for "Team Manager Initials". The parties also stipulated that the penalty consideration form for 2009 was signed; it was initialed.

**[*17]** understatement, and a substantial valuation misstatement. Respondent

concedes that he did not obtain the required approval for negligence or a

substantial valuation misstatement. At issue is the substantial understatement

penalty.

D.      2009 Tax Year Penalty

Revenue Agent Diane L. Linne (RA Linne) examined petitioners' 2009 joint

return and PPI's 2009 S corporation return and proposed to impose a section

6662(a) underpayment penalty for negligence. On or around September 24, 2013,

she prepared a penalty consideration form and a negligence lead sheet asserting

the penalty. On September 26, 2013, Mr. Olivieri, her immediate supervisor,

signed the penalty consideration form and lead sheet approving the negligence

penalty.[7] On October 3, 2013, respondent timely issued a notice of deficiency

determining a negligence penalty.

OPINION

Section 6662(a) provides for a 20% accuracy-related penalty on an

underpayment of tax attributable to (1) negligence or disregard of rules and

regulations, (2) a substantial understatement of income tax, or (3) a substantial

---

[7]The parties stipulated that the lead sheet was signed on September 26, 2013. The date is illegible. The penalty consideration form was dated September 26, 2013.

[*18] valuation misstatement.  Sec. 6662(a) and (b)(1), (2), and (3).  Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to maintain adequate books and records or to substantiate items properly, and the term "disregard" includes "any careless, reckless, or intentional disregard."  Id. subsec. (c); sec. 1.6662-3(b)(1), Income Tax Regs.  An understatement of income tax generally means the excess of tax required to be reported on the return over the amount shown on the return.  Sec. 6662(d)(2)(A).  An understatement is substantial in the case of an individual if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Id. subsec. (d)(1)(A).

A substantial valuation misstatement exists where the value or adjusted basis of any property claimed on any return is 150% or more of the amount determined to be the correct amount of such value or adjusted basis (200% for returns filed on or before August 17, 2006).  Id. subsec. (e)(1)(A).  Under section 6662(h), the section 6662 penalty is increased to 40% if the underpayment is attributable to a gross valuation misstatement.  A gross valuation misstatement exists if the value or adjusted basis of any property claimed on a tax return is 200% or more of the correct amount (400% for returns filed on or before August 17, 2006).  Id. subsec. (h)(2)(A)(i).

[*19] Section 6662A imposes a 20% accuracy-related penalty on the portion of an understatement attributable to a reportable or listed transaction. Sec. 6662A(a), (b)(2). The penalty increases to 30% if the taxpayer did not adequately disclose the transaction. Id. subsec. (c). However, the section 6662A penalty does not apply with respect to the portion of an understatement on which a gross valuation misstatement penalty is imposed. Id. subsec. (e)(2)(B).

The Commissioner bears the burden of production with respect to accuracy-related penalties asserted against individuals. Sec. 7491(c). In Graev III, 149 T.C. at 493, we held that the Commissioner's burden of production under section 7491(c) includes establishing compliance with the written supervisory approval requirement of section 6751(b). See Chai v. Commissioner, 851 F.3d 190, 216 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. Section 6751(b)(1) requires that the initial determination to assess a penalty be personally approved in writing by the immediate supervisor of the individual making the initial determination before the penalty is actually assessed. Once the Commissioner meets his burden of production, the taxpayer bears the burden of proving that the Commissioner's determination is incorrect or that the taxpayer has an affirmative defense; for example, he had reasonable cause and acted in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

[*20] In <u>Chai v. Commissioner</u>, 851 F.3d at 221, the Court of Appeals for the Second Circuit held that written supervisory approval is required no later than the issuance of the notice of deficiency for penalties determined therein. However, in <u>Clay v. Commissioner</u>, 152 T.C. ___, ___ (slip op. at 44) (Apr. 24, 2019), we held that written supervisory approval must be given before the proposed penalties are first formally communicated to the taxpayer in a writing that also advises the taxpayer of his right to appeal the penalties with the IRS Office of Appeals. Thus, a 30-day letter with an attached revenue agent's report constituted the initial determination to assess the penalties proposed therein for purposes of section 6751(b). <u>Id.</u>

In these cases, respondent determined various section 6662(a) and (h) accuracy-related penalties and a section 6662A accuracy-related penalty for a reportable transaction. However, only one accuracy-related penalty may be applied for any given portion of an underpayment even if that portion is subject to the penalty on more than one ground. Sec. 1.6662-2(c), Income Tax Regs. Section 6662(a) and (h) penalties are distinct, and the initial determination under each subsection must be separately approved for purposes of section 6751(b)(1). <u>Palmolive Bldg. Inv'rs, LLC v. Commissioner</u>, 152 T.C. ___, ___ (slip op. at 19) (Feb. 28, 2019). However, there is no requirement that all penalties be initially

**[\*21]** determined by the same individual or at the same time.  Id. at ___ (slip op. at 16).

I.    Innocent Spouse Relief

Two categories of penalties are at issue for 2003, those arising from petitioners' 2003 litigation and those from the partnership item adjustments determined in Superior Trading and assessed through a computational adjustment.  Petitioners asserted that they paid the penalties, and Mrs. Rogers seeks a refund in her innocent spouse claim.  In Rogers 2018, we held that she was not entitled to innocent spouse relief because she meaningfully participated in the 2003 litigation and she was not otherwise entitled to equitable relief.  On brief petitioners concede the penalty from the 2003 litigation and contend that Mrs. Rogers is entitled to a refund of the partnership penalties on the basis of respondent's alleged noncompliance with section 6751(b).  Respondent has not introduced any evidence of written supervisory approval of the penalties.

In her pleadings Mrs. Rogers did not assert a claim for innocent spouse relief for the partnership penalties.  She raised this issue for the first time in her brief on the section 6751(b) issue.  She argues that she has not had an opportunity to challenge her liability for the partnership penalties or respondent's noncompliance with section 6751(b).  Respondent asserts that the Court does not

**[*22]** have jurisdiction to review section 6751(b) compliance in an innocent spouse case and that if the Court has jurisdiction, the doctrine of res judicata bars relief.

Our jurisdiction over 2003 is pursuant to section 6015(e), and we held in Rogers 2018 that Mrs. Rogers is not entitled to innocent spouse relief. However, Mrs. Rogers now seeks to raise section 6751(b) noncompliance against penalties determined in a partnership-level case. We lack jurisdiction to consider penalties in a partner-level case that were determined at the partnership level. Gunther v. Commissioner, T.C. Memo. 2019-6, at *13. The Commissioner's noncompliance with section 6751(b) is a partnership-level defense. Parties in a partnership-level case may raise noncompliance with section 6751(b) as a defense. Dynamo Holdings Ltd. P'ship v. Commissioner, 150 T.C. ___ (May 7, 2018); Endeavor Partners Fund, LLC v. Commissioner, T.C. Memo. 2018-96, at *63. However, a partner may not raise section 6751(b) noncompliance as a defense at the partner level for penalties previously determined at the partnership level. Under section 6230, partner-level defenses are "those that are personal to the partner or are dependent upon the partner's separate return and cannot be determined at the partnership level." Sec. 301.6221-1(d), Proced. & Admin. Regs. The tax treatment of partnership items and the applicability of any penalty, addition to tax,

**[\*23]** or additional amount that relates to an adjustment to a partnership item is determined at the partnership level. Secs. 6221, 6226(f). Accordingly, Mrs. Rogers is not entitled to a refund of penalties paid with respect to the partnership item adjustments.[8]

II.    Deficiency Years

   A.    2005 Tax Year

For 2005 three revenue agents proposed penalties. Respondent satisfied his burden of production for the required approval under section 6751(b) for the negligence and substantial valuation misstatement penalties that RA Tabor proposed when Mr. Olivieri signed the penalty consideration form and Form 3198 that RA Tabor had prepared. Respondent satisfied his burden for each component for the section 6662 penalties for the adjustments to L&R's and SRI's returns when Mr. Olivieri executed the penalty consideration forms prepared by RA White and RA Pappas. Accordingly, we do not address whether Mr. Olivieri's signature

---

[8]Our jurisdiction over a petition seeking sec. 6015 relief is limited to determining whether the requesting spouse is entitled to postassessment relief from an existing liability. Block v. Commissioner, 120 T.C. 62, 68 (2003) (holding the Court lacked jurisdiction under sec. 6015 to determine the timeliness of the prior underlying assessment). Sec. 6015 assumes that there is an existing joint tax liability; it does not consider whether the underlying joint tax liability exists. The requesting spouse cannot seek review of preassessment procedures. Id. Accordingly, it is unclear whether we would have jurisdiction under sec. 6015(e) to consider sec. 6751(b) compliance.

[*24] on the revenue agent's report or Form 3198 would also constitute the required approval for any of the penalties proposed by RA White and RA Pappas.

The record also establishes section 6751(b) compliance for the section 6662 penalty on SRI's COGS adjustment and the section 6662A penalty for the DAT adjustment initially determined by respondent's trial attorneys. Respondent asserted the penalty attributable to the COGS adjustment for the first time in the amendment to the answer. Both Attorneys Connell and Petrino worked on the amendment, but the record does not identify which attorney made the initial determination. Petitioners did not address this lack of clarity on brief. AAC Cannarozzi approved the penalty in writing by initialing and dating a draft of the amendment to the answer. AAC Cannarozzi was both attorneys' supervisor. Accordingly, we find that respondent satisfied his burden of production for section 6751(b) compliance regardless of which attorney initially determined the penalty.

AAC Cannarozzi also approved Attorney Connell's initial determination of the section 6662A penalty through her emails to the IRS Technical Services Unit. Section 6751(b) does not require written supervisory approval in any particular form. Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. at ___ (slip op. at 17); see Deyo v. United States, 296 F. App'x 157, 159 (2d Cir. 2008) (requiring "only personal approval in writing, not any particular form of signature or even

[*25] any signature at all"). Moreover, it does not explicitly require a signature; it requires the penalty be "personally approved (in writing)". Sec. 6751(b)(1); see Graev III, 149 T.C. at 488-489 & n.3 (a supervisor's initials were sufficient writing). Accordingly, we find that AAC Cannarozzi's emails satisfied respondent's burden of production of section 6751(b) compliance.

Petitioners do not challenge the form of the written approval. Rather, they argue that trial attorneys do not have the authority to make an initial penalty determination for the first time in the notice of deficiency or respondent's pleadings. This position is inconsistent with caselaw and without merit. See Graev III, 149 T.C. at 494-498.

B.    2006 Tax Year

RA Tabor proposed the section 6662(a) negligence penalty on the unreported income as an alternative to the fraud penalty. He also proposed a section 6662(h) gross valuation misstatement penalty for the DAT adjustment and a section 6662(a) negligence penalty on the remaining adjustments for both petitioners. We do not need to address whether these later penalties were primary penalties or alternatives to the fraud penalty as our issue is limited to whether they

[*26] were approved in writing by a supervisor.[9] RA Tabor asserted the above penalties in his revenue agent's report and then prepared two forms asserting these penalties. He prepared a penalty consideration form that asserted the fraud and negligence penalties but did not indicate, or provide a limit to, the portion of the underpayment to which these penalties applied. He also prepared Form 3198 that included amounts for the fraud penalty on the unreported income, the section 6662(h) penalty on the DAT adjustment, and the 20% section 6662(a) penalty on the remaining portion as listed in the revenue agent's report. His supervisor, Ms. Valdez, approved the above penalties when she executed the penalty consideration form and Form 3198. Accordingly, respondent satisfied his burden of production, showing that he complied with section 6751(b) for the negligence and gross valuation misstatement penalties irrespective of whether they were primary or alternative penalties.

Attorney Connell recommended not asserting the fraud penalty against Mrs. Rogers. He recommended issuing a separate notice of deficiency to each petitioner. This recommendation does not alter our finding that respondent obtained the required approval of the section 6662(a) and (h) penalties against

---

[9]Questions exist concerning whether RA Tabor asserted the fraud penalty on the entire underpayment or only on a portion of it. However, we do not need to resolve these questions because we held Mr. Rogers not liable for fraud.

[*27] Mrs. Rogers. RA Tabor proposed the section 6662(a) and (h) penalties against Mrs. Rogers (as an alternative to the fraud penalty), and Ms. Valdez approved the penalties. Attorney Connell also initially determined the section 6662A penalty against both petitioners, against Mr. Rogers as an alternative to the fraud penalty, and against Mrs. Rogers (partially in the alternative to a section 6662(h) penalty). AAC Cannarozzi approved the penalties by initialing and dating a copy of the technical services memo.

Respondent also obtained the required written supervisory approval for the penalty attributable to the 2006 COGS adjustments. In the 2006 notices respondent disallowed SRI's COGS deduction on the basis of a lack of substantiation and determined a section 6662(a) penalty on the resulting underpayment; RA Tabor proposed this penalty, and Ms. Valdez approved it in writing. Respondent filed an amendment to the answer to disallow the COGS adjustment on the alternative ground that petitioners mischaracterized the 2004 land transfer as a sale and as a result overstated SRI's basis in the land and overstated SRI's COGS on the subsequent resale of the land as subdivided lots. The amendment to the answer also determined a section 6662(a) penalty attributable to the underpayment from the COGS adjustment. Either Attorney Petrino or Connell made the initial determination of the penalty, and their

[*28] supervisor, AAC Cannarozzi, approved the penalty in writing by initialing the amendment to the answer before its lodging with the Court. We hold that respondent satisfied his burden of production for section 6751(b) compliance for the COGS adjustment whether required before issuance of the notices of deficiency or the amendment to the answer's filing.

### C. 2007 and 2009 Tax Years

The record contains executed penalty consideration forms for 2007 and 2009 showing written supervisory approval of the penalties at issue. Respondent has met his burden of production for his section 6751(b) compliance for the section 6662(a) penalties for a substantial understatement of income tax for 2007 that RA Chiaculas proposed and for negligence for 2009 that RA Linne proposed.

### III. Liability for Penalties

Respondent determined a section 6662(h) gross valuation misstatement penalty for 2005 and 2006 for the portions of the underpayments attributable to SRI's and Mr. Rogers' DAT adjustments, respectively. They had adjusted bases in the distressed assets of zero. For 2005 SRI claimed a DAT deduction of approximately 30 times its basis in the distressed assets; for 2006 Mr. Rogers claimed a DAT deduction of approximately 50 times his basis. As the misstatements were greater than 200%, the amounts claimed as DAT deductions

[*29] result in gross valuation misstatements, and petitioners are liable for the section 6662(h) penalties for 2005 and 2006 unless they establish that they had reasonable cause for the underpayments and acted in good faith. See sec. 6664(c); sec. 1.6662-5(g), Income Tax Regs.

Respondent also determined section 6662A penalties for 2005 and 2006 partially in the alternative. In Kenna Trading, LLC v. Commissioner, 143 T.C. at 371-372, the Court determined that the distressed asset transactions at issue were listed transactions reportable pursuant to section 1.6011-4(e)(2)(i), Income Tax Regs. Petitioners claimed deductions from the DAT tax shelter on their 2005 and 2006 tax returns and failed to make any disclosures. Accordingly, they are liable for section 6662A 30% penalties for the portions of their 2005 and 2006 understatements from the DAT transactions to the extent the understatements are not already subject to the 40% section 6662(h) gross valuation misstatement penalty. See sec. 6662A(e)(2)(B).

We find that petitioners were negligent in their underpayments of tax for 2005 and 2006. They had substantial amounts of unreported income from Mr. Rogers' business activities, his promotion of the DAT tax shelter, and the sale of SRI residential lots. They were also negligent in their failure to maintain adequate books and records to substantiate the amounts or business purpose of their

[*30] business expenses. Petitioners' books and records are in disarray. They presented voluminous, disorganized records to the Court. The records did not reconcile with the amounts of the deductions claimed or with each other. They deducted substantial amounts of personal expenses for not only themselves but also their adult son and his family. They claimed substantial amounts of travel, entertainment, and meal expense deductions without providing contemporaneously maintained records. They deducted a significant amount of travel expenses incurred for Mrs. Rogers without a business purpose for the travel. For 2006 petitioners reported negative taxable income despite Mr. Rogers' significant salary as an attorney. On the basis of this pattern of behavior, we hold that petitioners are liable for the section 6662(a) and (b)(1) penalty for negligence with respect to their 2005 and 2006 underpayments.

At issue for 2007 is a section 6662(a) and (b)(2) penalty for a substantial understatement of income tax. In Rogers 2018, we allowed a small portion of the deductions disallowed in the notice of deficiency, and respondent conceded other deductions. If petitioners' understatement of income tax for 2007 (recomputed pursuant to Rule 155) exceeds the greater of 10% of the tax required to be shown on the return or $5,000, respondent's determination of the penalty under section 6662(b)(2) is sustained.

[*31] At issue for 2009 is the section 6662(a) and (b)(1) penalty for negligence. PPI deducted COGS of over $1.4 million, an amount conceded or disallowed in its entirety, on the basis that the fair market value of SRI's unsold lots had decreased. Neither SRI nor PPI sold any residential lots during 2009. For 2009 petitioners continued to deduct personal living expenses and failed to maintain adequate records. They had a multiyear pattern of underreported tax liability, deduction of personal expenses, and failure to maintain proper records. Accordingly, we find that they acted negligently with respect to their underpayment for 2009.

The section 6662(a) and (h) penalties may not be imposed with respect to any portion of an underpayment of tax for which the taxpayer establishes that he had reasonable cause and acted in good faith. Sec. 6664(c)(1). Whether a taxpayer has acted with reasonable cause and in good faith depends on the facts and circumstances of the case. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally the most important factor is the taxpayer's effort to assess his proper tax liability. Id. A taxpayer's knowledge, education, and experience are relevant factors to indicate reasonable cause and good faith. Id.

Petitioners have not established that they are entitled to a reasonable cause defense for any of the penalties at issue. They were acting under the guidance of Mr. Rogers, a tax professional with over 30 years of experience. Although they

[*32] claim that other tax professionals favorably reviewed distressed asset transactions similar to the DAT tax shelter, Mr. Rogers should have known on the basis of his education and business sophistication that the DAT tax shelter would not result in the sought-after tax benefits. We previously found that Mr. Rogers' knowledge and experience should have put him on notice that the DAT tax shelter would be recharacterized in accordance with its substance and would not generate the desired tax benefits. See Kenna Trading, LLC v. Commissioner, 143 T.C. at 369-370.

Petitioners' failure to substantiate large amounts of the business expenses underlying their deductions is inexcusable considering that Mr. Rogers is a C.P.A. and a tax attorney and should understand the importance of recordkeeping. They deducted personal living expenses for not only themselves but also their adult son and his family. At trial, oftentimes we found Mr. Rogers to lack credibility. Petitioners argue that we should dismiss the penalties because Mr. Rogers suffered from alcoholism during the years at issue. He was hospitalized for an extended period during 2009. However, he was able to run several businesses during the years at issue and to implement highly sophisticated tax shelter transactions, and he was a partner of a major international law firm. He continued to function at a high level. In addition, Mrs. Rogers is highly educated and has significant

**[*33]** business experience.  She is a trained lawyer, represented clients in property tax abatements, and assisted with office management at Rogers & Associates.  We hold that petitioners acted with negligence and failed to show reasonable cause or good faith to avoid penalties.

The Court has considered all of the parties' arguments and, to the extent not discussed above, concludes that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decisions will be entered under</u>

<u>Rule 155</u>.