In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2652

JOHN E. and FRANCES L. ROGERS,

*Petitioners-Appellants*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

Appeal from the United States Tax Court.
No. 22667-07 — **Harold A. Haines**, *Judge*.

ARGUED APRIL 19, 2013 — DECIDED AUGUST 26, 2013

Before EASTERBROOK, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. A trial before the Tax Court resulted in a determination that in 2003 John Rogers and his wife had failed without justification to report $984,655 of taxable income attributable to income of Portfolio Properties, Inc. (PPI), an S corporation wholly owned by Mr. Rogers, and to a distribution that he had received from PPI. T.C. Memo 2011-277, 102 T.C.M. (CCH) 536 (2011). For tax purposes the income of an S Corporation is deemed the personal income

of the shareholders, 26 U.S.C. § 1366, in this case the share-holder. After the Tax Court rejected Rogers' arguments—repeated in this appeal—that the disputed income had been held in trust for third parties and so wasn't taxable to him, the parties stipulated that if Rogers' arguments were rejected he had a tax deficiency of $269,107 and also owed the government a $5000 penalty. (We disregard his wife. Although the couple filed a joint return, she appears to have had nothing to do with the shenanigans that gave rise to the deficiency.) As a detail, we remark the minuteness of the penalty. The Tax Court determined that Rogers' $269,107 tax deficiency was attributable to his "substantial understatement of income tax," which is penalized by 26 U.S.C. § 6662(a). The penalty specified in the statute is 20 percent of the deficiency, but the stipulation we mentioned states that only a 5 percent penalty would be imposed, we know not why.

This is a companion case to *Superior Trading, LLC v. Commissioner*, Nos. 12-37 *et al.*, also decided today, in which we uphold the disallowance of losses claimed by companies created by Rogers to implement a distressed asset/debt tax-shelter ("DAD") scheme. We also uphold the imposition of a "gross valuation misstatement" penalty. Though the *éminence grise* of the unlawful tax shelter, Rogers was not a party to that case, the deficiency and penalty assessed against him in this case arose from his creation of the shelter.

Rogers had created a partnership called Warwick Trading, LLC. The partners were a Brazilian retailer named Lojas Arapuã S.A. that contributed receivables to the partnership that were worth a small fraction of their face amount because they were largely uncollectible, and a company owned by Rogers named Jetstream Business Limited that was des-

ignated Warwick's managing partner, responsible for collecting the receivables. Because property contributed to a partnership retains its original basis no matter how far its market value has fallen, the receivables had the potential to generate losses that would be deductible from the taxable income of U.S. taxpayers who later entered the partnership, though in *Superior Trading* we hold that the potential could not be realized because, among other reasons, the partnership was a sham.

Rogers had created PPI—which plays a critical role in this case—to sit between himself and Jetstream. The tax shelter was sold to U.S. taxpayers for a total of $2.4 million. Half was the purchase price of partnership interests in Warwick. The other half appears to have been a payment to Rogers (via PPI) for creating the shelter. Rogers directed the buyers of the interests (the shelter investors) to wire the entire $2.4 million to PPI's bank account rather than Warwick's, telling them that Warwick lacked adequate banking facilities. PPI funneled half the money received from the investors to Warwick to pay Arapuã for the receivables that undergirded the partnership interests that the shelter investors were acquiring, but retained the other half. The Tax Court deems the half (i.e., $1.2 million) retained by PPI taxable income of Rogers; he reported less than half of it as income.

He argues that the $1.2 million retained by PPI (some of which, however, PPI distributed to him) was held in trust for the benefit of Warwick and that therefore the alleged tax deficiency was a "partnership item" and so should have been resolved "at the partnership level," 26 U.S.C. §§ 6221, 6225, 6226, and so not in this case, which is about personal not partnership income. *Superior Trading* is the case that deals

with the partnership level of Rogers' tax shelter, and the issue of the Rogers' alleged tax deficiency was not raised in that case. But the Tax Court ruled in the present case that the money received by PPI and either retained by it or distributed to Rogers but not forwarded to Warwick was not held in trust for Warwick—it was PPI's money—and so the tax status of that money was not an issue for resolution in a partnership-level case.

There is no documentation evidencing a trust. Rogers describes the money as "imprest [*sic*] with a trust for the benefit of Warwick." That sounds a little like a constructive trust, which indeed usually lacks documentation—because it's not a real trust. *Restatement (Third) of Restitution & Unjust Enrichment* § 55, comment b (2011). It is a remedy for unjust enrichment: "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee." *Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 386 (N.Y. 1919) (Cardozo, J.); see also 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 4.3(2), pp. 589–90 (2d ed. 1993). But Rogers is not arguing that PPI, which he controls, converted or otherwise wrongfully deprived Warwick of any money or other property; and if it had, that could hardly generate a tax benefit for Rogers, for he would be the wrongdoer.

Nevertheless there is *something* to Rogers' trust argument, though not enough. An agent receiving funds on behalf of his principal has a fiduciary duty to maintain the principal's funds in a segregated account. *Restatement (Third) of Agency* § 8.12 and comment c (2006); cf. *Rodrigues v. Herman*, 121 F.3d 1352, 1356 (9th Cir. 1997). PPI appears to have done that with regard to the $1.2 million that the shelter in-

vestors were paying for the partnership interests. For it for-warded that amount to Warwick for distribution to Arapuã (and to another Brazilian company which had incurred costs in helping to administer the tax shelter).

Rogers testified that the other half, the $1.2 million that PPI did *not* forward to Warwick, was also held in trust for Warwick, to pay expenses that Warwick might incur in the future. The Tax Court wasn't required to believe him, and didn't. Rogers had caused PPI to distribute to him $732,000 of the $1.2 million that PPI did not forward to Warwick, and he argues that he held all $732,000 in trust for Warwick. But he paid income tax on $513,501 of that amount, which he de-scribed as payment for his legal services to PPI. That charac-terization is inconsistent with his having held the money in trust for Warwick. He says that he mistakenly reported it as personal income, because 2003 was a difficult time for him and he was confused. But he never sought to file an amend-ed return, and years later he stipulated that the $513,501 was indeed personal income. He tried to withdraw the stipula-tion at the trial; the court refused to let him. That was sensi-ble. How could anyone believe that if the $513,501 was not his personal income, he, though an experienced tax lawyer, would nevertheless have paid income tax on it?

Worse, if Rogers was holding in trust the money he re-ceived from PPI and then using it to reimburse himself for legal services, he was committing a grave breach of trust. *Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000); see Ill. Rule of Professional Conduct 1.15 (2011); ABA Model Rule of Professional Con-duct 1.15 (2013). He thus is driven to argue both that the money was in trust and so not taxable to him and that it was

his personal property and so he committed no ethical or legal violations in using it to defray personal expenses. That is a tightrope that no one can walk. The Tax Court was justified in inferring from his treatment of the bulk of the $732,000 distribution that he caused PPI to pay him that only the $1.2 million paid to Warwick (and not in issue in this case) was trust money. This was more telling evidence than the explanations Rogers offered after being caught with his hand in the cookie jar.

One loose end remains to be tied up. The money that PPI neither forwarded to Warwick nor deducted from its income as payments to Rogers and others for services (i.e., $1,218,377 minus $513,501 paid to Rogers and $22,039 paid to law firms for legal services rendered to PPI) was presumably intended to compensate Rogers for thinking up and organizing the tax shelter. All that matters, though, is that it was income to him because PPI was an S corporation and Rogers its only shareholder, rather than being money held in trust by PPI or by him.

AFFIRMED.