T.C. Memo. 2017-130

UNITED STATES TAX COURT

FRANCES L. ROGERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15306-15.                          Filed July 3, 2017.

<u>John E. Rogers</u>, for petitioner.

<u>Mayah Solh-Cade</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  Petitioner seeks relief from joint and several liability for a deficiency determined with respect to the joint income tax return that she filed with her husband, John E. Rogers, for tax year 2004.  The deficiency was sustained in part by this Court in <u>Rogers v. Commissioner</u>, T.C. Memo. 2014-141, <u>aff'd per order</u>, No. 15-3678 (7th Cir. Nov. 3, 2016).  The issues for consideration

**[\*2]** are: (1) whether petitioner is barred from obtaining relief from joint and several liability for tax year 2004 under section 6015(g)(2); and (2) if not, whether she is entitled to relief under either section 6015(b) or (f). All section references are to the Internal Revenue Code in effect at all relevant times.

FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated in our findings by this reference. Petitioner resided in Illinois when she timely filed her petition.[1]

Petitioner's Background

Petitioner and her husband married in 1967 and remained married as of the date of trial in this case. Petitioner's husband is an attorney admitted to practice before this Court, and he represented her.

Petitioner is highly educated. In 1963 she graduated with a bachelor's degree in chemistry, and in 1965 she completed a master's degree in biochemistry. In 1975 she completed a master's degree in business administration (M.B.A.). In 1981 she earned a doctorate in educational administration. Petitioner attended law

---

[1]Respondent did not issue a final determination with respect to petitioner's request for relief. Petitioner's petition was filed within 90 days of the date that was six months after the date that she submitted her request. See sec. 6015(e)(1)(A).

**[*3]** school, and in 1990 she completed her law degree. While attending law school she took classes in corporate and individual income tax.

Petitioner has taken courses at her local community college. In 2011 and 2012 she completed multiple classes in tax and accounting, including income tax accounting, advance tax accounting, and principles of financial accounting.

Petitioner has held a real estate broker's license since 1967. In 1991 petitioner was admitted as an attorney in the State of Illinois. She is currently a member of the Chicago Bar Association.

From 1973 to 1987 petitioner taught chemistry and computer science to high school students. From 1990 to 2005 petitioner held the position of associate principal. As associate principal she supervised teachers and oversaw the curriculum for a high school of about 2,000 students. In 2005 she retired from the education field.

After her retirement petitioner taught herself how to prepare property tax appeals, and she appealed property tax assessments for properties that she owned. In 2009 she began preparing appeals for other property owners. Through 2016 she continued to operate a property tax appeals business.

Petitioner was independently wealthy before she met her spouse. She received through gift or inheritance properties from her parents, including 31 acres

[*4] of undeveloped land in Orland Park, Illinois (Orland Park property), and 83 acres in Homer Glen, Illinois (Oak Pointe). She currently owns, either directly or beneficially, several properties in varying stages of development.

During 2004 petitioner and her husband worked together to develop the Orland Park property into a residential subdivision, Sterling Ridge. Pursuant to the development strategy petitioner transferred ownership of the Orland Park property to Sterling Ridge, Inc. (SRI), a corporation of which she is the sole shareholder. Portfolio Properties, Inc. (PPI), an entity wholly owned and operated by her husband, was involved in building houses on lots in the Sterling Ridge subdivision. SRI began selling lots in the Sterling Ridge subdivision in 2004.

Petitioner is the sole beneficiary of a trust that currently holds title to Oak Pointe. She is involved in matters related to management and upkeep of Oak Pointe, including issues that arise with respect to utilities, cell tower service, repairs and maintenance, and negotiations with State officials over the widening of an adjacent roadway. In 2004 petitioner planned to develop the land at Oak Pointe into a mixed-used development of retail and multifamily dwellings.

Petitioner has opened and maintained during her marriage numerous bank accounts in her own name. On some of the accounts that she opened she listed her occupation as "attorney". She maintained joint bank accounts with her husband.

**[\*5]** During the years 2002 through 2012 petitioner made deposits into the joint accounts, at least one of which was kept for the couple's household financial matters. She paid bills and made household purchases from the joint accounts.

Petitioner's Husband's Business

Petitioner's husband is a tax attorney with over 40 years of experience. See Rogers v. Commissioner, at \*4. He received a law degree from Harvard University and an M.B.A. from the University of Chicago. Id. He is a certified public accountant and a licensed real estate broker.

In 2004 petitioner's husband was a partner with the law firm Seyfarth Shaw, LLP, in Chicago, Illinois. Id. at \*5. "In 2004 he also promoted to clients 'tax-advantaged' transactions that dealt with the acquisition of, and sales of indirect interests in, Brazilian consumer receivables". Id. As we have found previously:

> "[He] set up three business entities to manage numerous holding and trading companies used in the Brazilian receivable transactions. The first, PPI, was incorporated under the laws of Illinois \* \* \*. \* \* \* [Petitioner's husband] was its sole shareholder. The second, Jetstream Business Limited (Jetstream), a British Virgin Islands limited company, was formed by \* \* \* [petitioner's husband] with PPI as its sole shareholder. \* \* \*"

> [He] formed the third entity \* \* \* called Sugarloaf. In 2004 Jetstream was the managing member and tax matters partner of Sugarloaf. Thus, in 2004 \* \* \* [petitioner's husband] had control

[*6] over PPI, Jetstream, and Sugarloaf. During 2004 Sugarloaf entered into transactions * * * for, in effect, acquiring distressed Brazilian consumer accounts receivable and selling interests in them to numerous investors through trading and holding companies. * * * [Id. at *5-*6 (quoting Rogers v. Commissioner, T.C. Memo. 2011-277, slip op. at 3-4, aff'd, 728 F.3d 673 (7th Cir. 2013)).]

Investors in the partnership structures devised by petitioner's husband claimed partially worthless bad debt deductions in connection with the acquisition of the consumer receivables.[2]

Petitioner's husband traveled extensively on business, and petitioner frequently traveled with him. In 2006 she traveled with him to Brazil. She learned that his business involved the purchase of Brazilian consumer debt and that the transactions he worked on had something to do with saving taxes.

In a partnership-level proceeding this Court found that the transactions that petitioner's husband promoted "essentially mirror the Distressed Asset/Debt or 'DAD' [tax] shelter". Kenna Trading, LLC v. Commissioner, 143 T.C. 322, 336 (2014). We held that respondent had correctly disallowed in full the bad debt deductions claimed by the investors in the Brazilian receivables transactions. Id. at 360.

---

[2]For more details on the Brazilian receivables transactions, see our findings in Kenna Trading, LLC v. Commissioner, 143 T.C. 322 (2014). The instant case is an offshoot of those transactions, though the consumer receivables transactions themselves are not before us.

[*7] Joint Tax Returns

Since petitioner and her husband first married, he had always prepared their jointly filed Forms 1040, U.S. Individual Income Tax Return, including the joint return filed for 2004. They had a routine they followed each year in preparing their joint return. After petitioner's husband obtained the necessary documents and prepared the joint return, he and petitioner went through the return together, and petitioner would ask questions.

Petitioner was interested to know whether she and her husband had made money or suffered losses for a given year. She discussed with him any balances due on their joint returns. She was aware that they usually paid little or no tax and thought this was so because of her husband's being a good lawyer. Petitioner had access to the documents that her husband used to prepare their joint returns, but she did not review them.

For their 2004 joint tax return petitioner gave her tax information and documents, including her Form W-2, Wage and Tax Statement, and Forms 1099, to her husband so that he could prepare their return for that year. In 2004 petitioner earned a salary for her work as an assistant principal. She had income reported on a Schedule C, Profit or Loss From Business, for that year. On her Schedule C petitioner's principal business activity was reported as "realtor". For

**[*8]** 2004 her husband received compensation from his law firm and had income from his separate business activity that he reported on a Schedule C.

In addition to Schedules C petitioner and her husband attached to their 2004 joint return a Schedule E, Supplemental Income and Loss.  On Part II, Income or Loss From Partnerships and S Corporations, of the Schedule E, they reported income and losses from passthrough entities that they controlled, including SRI and PPI.  For the net losses reported on the Schedule E, Part II, for 2004 they claimed a deduction against ordinary income of $476,308.

Before signing the 2004 joint return petitioner asked her husband whether the return was complete and accurate.  She reviewed the return and asked him clarifying questions.

Rogers & Associates

In early 2009 petitioner's husband became acutely ill and was hospitalized for an extended period.  Around this time petitioner took over the role of office manager for Rogers & Associates, a law office that her husband had opened in 2008.  She became more involved in his business affairs.

Petitioner paid the rent, payroll, and other bills and made deposits on behalf of Rogers & Associates.  In some instances, she accessed her own accounts to pay these expenses.  Petitioner reviewed and sorted her husband's mail, including

[*9] letters sent by the Internal Revenue Service (IRS). She separated out correspondence having to do with his business dealings and scanned those documents into the computer.

2004 Deficiency Case

On December 29, 2009, respondent issued petitioner and her husband a notice of deficiency for tax year 2004, which made adjustments resulting in a deficiency of $466,117, plus penalties and additions to tax. The notice disallowed business expense deductions that they had claimed on their Schedules C, as well as deductions they had claimed for losses reported on the Schedule E, and determined that they had received additional unreported income during 2004.

On March 29, 2010, petitioner and her husband filed a joint petition in this Court in response to the 2004 notice (2004 deficiency case). The issues involving petitioner's disallowed business expense deductions were settled by the parties before trial. The remaining disputed adjustments related mainly to petitioner's husband's income from PPI and deductions that he had claimed in connection with PPI and his other business activities. See Rogers v. Commissioner, at *4.

Trial in the 2004 deficiency case was held on February 29, 2012, in Chicago (2012 trial). Petitioner's husband acted as counsel for himself and petitioner at the 2012 trial. Petitioner attended the 2012 trial, and during the trial she sat next to

[*10] her husband at the table reserved for petitioner and petitioner's counsel. Petitioner's husband considered calling her as a witness. Ultimately she did not testify.

Petitioner did not raise a claim for relief from joint and several liability under section 6015 at any stage in the 2004 deficiency case. On July 17, 2014, the Court issued its opinion in the 2004 deficiency case. See id. The Court sustained in part respondent's determinations in the notice of deficiency.[3] Id. at *60.

Request for Relief From Joint and Several Liability

On September 17, 2014, petitioner signed and submitted to the IRS a Form 8857, Request for Innocent Spouse Relief, on which she requested relief from joint and several liability with respect to all joint tax returns that she had filed with her husband for 2002 through 2012. On June 12, 2015, petitioner filed a stand-alone petition seeking relief from the deficiency that was the subject of the 2004 deficiency case.

On August 26, 2015, a final decision was entered in the 2004 deficiency case. Petitioner and her husband appealed the decision, and the Court's opinion

---

[3]By order dated November 26, 2014, this Court granted in part a motion for reconsideration that petitioners filed in the 2004 deficiency case. With respect to an issue that is not relevant here the Court amended its July 17, 2014, Memorandum Opinion.

**[*11]** was affirmed by the U.S. Court of Appeals for the Seventh Circuit on November 3, 2016. Rogers v. Commissioner, No. 15-3678 (7th Cir. Nov. 3, 2016).

OPINION

Generally, spouses electing to file a joint Federal income tax return are jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3). Under specific circumstances section 6015 provides relief from joint and several liability on a joint return. Petitioner seeks relief from joint and several liability under either section 6015(b) or (f). Respondent contends that petitioner is barred from such relief pursuant to the provision of section 6015(g)(2).

Under the judicial doctrine of res judicata, when a court of competent jurisdiction enters a final judgment on the merits of a cause of action, the parties to the action are bound by every matter that was or could have been offered and received to sustain or defeat the claim. Commissioner v. Sunnen, 333 U.S. 591, 597 (1948); see also Gustafson v. Commissioner, 97 T.C. 85, 91 (1991). The doctrine of res judicata promotes judicial economy by precluding repetitious lawsuits. Gustafson v. Commissioner, 97 T.C. at 91. Federal income taxes are determined annually, with each year being a separate cause of action, and res judicata is applied to bar subsequent proceedings involving the same tax year.

[*12] Commissioner v. Sunnen, 333 U.S. at 597-598.  Common law principles of res judicata generally bar a party to a prior proceeding for the same tax year from seeking relief from joint and several liability regardless of whether the party raised the claim in the prior proceeding.  Vetrano v. Commissioner, 116 T.C. 272, 280 (2001), supplementing T.C. Memo. 2000-128.

Section 6015(g)(2) modifies the common law doctrine of res judicata with regard to claims for relief from joint and several liability.  Thurner v. Commissioner, 121 T.C. 43, 50 (2003).  Pursuant to section 6015(g)(2), res judicata does not bar a taxpayer from requesting relief under section 6015(b), (c), or (f) if:  (1) relief from joint and several liability under section 6015 was not an issue in the prior proceeding; and (2) the taxpayer did not participate meaningfully in the prior proceeding.

Relief for petitioner under section 6015 was not an issue in the 2004 deficiency case.  Respondent contends that petitioner participated meaningfully in the 2004 deficiency case and that she is barred from obtaining relief under the rule of section 6015(g)(2).  Petitioner bears the burden of proving that she did not participate meaningfully in the prior proceeding.  See Deihl v. Commissioner, 134 T.C. 156, 162 (2010); Monsour v. Commissioner, T.C. Memo. 2004-190, slip op. at 36.

**[*13]** "Meaningful participation" is not defined in section 6015(g)(2) or the accompanying regulations. Neither has this Court clearly defined "meaningful participation". Generally, we look to the totality of the facts and circumstances to determine whether a taxpayer participated meaningfully in a prior proceeding. See Harbin v. Commissioner, 137 T.C. 93, 98 (2011); Deihl v. Commissioner, 134 T.C. at 162.

Specific acts such as signing court documents and participating in settlement negotiations may be indicators that the taxpayer participated meaningfully in the prior proceeding. Monsour v. Commissioner, slip op. at 32-36. However, "merely complying" with the other spouse's instructions to sign the pleadings and other documents that were filed in the prior litigation is not conclusive of meaningful participation. Thurner v. Commissioner, 121 T.C. at 53.

We have indicated that exercising exclusive control over the handling of the prior proceeding and having the opportunity to raise a claim for relief from joint and several liability in the prior proceeding are especially probative on the issue of meaningful participation under section 6015(g)(2). See Deihl v. Commissioner, 134 T.C. at 164-165; Thurner v. Commissioner, 121 T.C. at 53; Huynh v. Commissioner, T.C. Memo. 2006-180, aff'd, 276 F. App'x 634 (9th Cir. 2008). The taxpayer's level of education and sophistication and his or her knowledge of

[*14] the activities giving rise to the deficiency are relevant factors that we consider. See Harbin v. Commissioner, 137 T.C. at 98; Diehl v. Commissioner, 134 T.C. at 163; Monsour v. Commissioner, slip op. at 34-36. The fact that a taxpayer was represented by counsel at the prior proceeding is an indication of meaningful participation. See Noons v. Commissioner, T.C. Memo. 2004-243, slip op. at 9.

Petitioner contends that she did not meaningfully participate in the 2004 deficiency case. She did not sign the court documents filed in the 2004 deficiency case, and she testified that she had not looked at many of those documents. On her Form 8857 and in her testimony petitioner portrays herself as having a near complete lack of knowledge or sophistication with respect to business and financial matters. For example, she states that before 2009 she "was not capable of understanding a checking account or credit card statement" and that she still "is unable to understand basic financial statements".

According to petitioner her husband "took care of everything" regarding the family's finances and made most or all financial decisions for her. She claims that she relied on him to handle tax and financial matters that affected the family, and she believed her reliance was appropriate given that he was a "tax professional * * * well respected by his colleagues and clients." Despite having an M.B.A. and

**[*15]** a J.D. and having completed multiple courses in taxation petitioner contends that she has "no understanding" of items and transactions reported on their joint returns, which were the subject of the 2004 deficiency case. Petitioner testified that during the 2012 trial she "had no idea what was happening".

Petitioner's testimony about the extent of her ignorance is not credible. She was an educator and administrator and the holder of several advanced degrees, and her husband of 45 years was an extremely well-practiced tax attorney. Before the 2012 trial she had successfully completed at least four courses in tax and accounting. She maintained substantial real property, bank accounts, and other assets in her own name. During 2004 and in later years petitioner managed and participated in significant business dealings involving her own properties. Her tax returns show she was an active real estate agent.

Some of petitioner's own business activities overlapped with businesses owned or operated by her husband, including PPI. She held joint bank accounts with him, and she made decisions about family finances and how their mutual business interests were managed. Petitioner testified that she understood the basics of the Brazilian receivables transactions in 2006. She became more deeply involved in managing her husband's business affairs in 2009. What petitioner knew about issues affecting their family finances in the years after 2004 is relevant

[*16] for purposes of res judicata because she could have raised a claim for relief from joint and several liability for that tax year at any time before or during the 2012 trial.

Petitioner and her husband shared a close relationship. We find no evidence of abuse or of his taking steps to conceal from her any of the business dealings or transactions that gave rise to the deficiency for 2004. To the contrary, he took time to review and explain items reported on their joint returns, and he answered questions that she asked. No evidence was put forward suggesting that he failed to adequately represent her interests or that he refused to keep her informed about the issues to be determined in the 2004 deficiency case.

The fact that petitioner did not testify at the 2012 trial is not dispositive on the issue of her meaningful participation. Petitioner is an attorney. She reviewed and signed the joint tax return for the tax year that was at issue. At the time of the 2012 trial she had previously attended at least one trial involving deficiencies determined for one of her husband's business entities, and the Tax Court had recently issued an opinion upholding the deficiency determined in the couple's joint income tax for 2003. See Rogers v. Commissioner, T.C. Memo. 2011-277.

Petitioner is a highly educated and accomplished professional who had the sophistication to preserve and develop her own assets. We do not find it credible

**[\*17]** that she was unaware of the legal implications of being a named party in the 2004 deficiency case. She had the benefit of experienced counsel throughout the proceeding. She attended the 2012 trial, sat at petitioner's table, and listened to the arguments presented by both sides.

In the light of these facts and circumstances we conclude that petitioner had more than a fair opportunity to raise a claim for relief from joint and several liability during the 2004 deficiency case. If, as she contends, she truly had "no idea" about the matters being considered, then she could and should have consulted with her attorney to clarify any misunderstanding. If she was confused about the transactions that were the focus of the prior proceeding, she should have asked questions or become more engaged. She chose to do nothing.

Section 6015 relief "was not designed to protect willful blindness or to encourage the deliberate cultivation of ignorance." Friedman v. Commissioner, 53 F.3d 523, 525 (2d Cir. 1995), aff'g in part, rev'g in part T.C. Memo. 1993-549. By the same token section 6015(g)(2) was not designed to provide a second chance at relief for a litigant who had the wherewithal and the opportunity to raise a claim in a prior proceeding.

**[\*18]** Petitioner has failed to meet her burden of proving that she did not participate meaningfully in the 2004 deficiency case.  We conclude that her claim for relief from joint and several liability is barred by section 6015(g)(2).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.