T.C. Memo. 2020-91

UNITED STATES TAX COURT

JOHN E. ROGERS AND FRANCES L. ROGERS, ET AL.,[1] Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 29356-14, 15112-16,        Filed June 18, 2020.
2564-18.

John E. Rogers, pro se.

Andrew R. Roberson and Evan D. Walters, for petitioner Frances L. Rogers.

Mayah Solh-Cade, Mayer Y. Silber, Briseyda Villalpando, Jay D. Adams,

Sarah E. Sexton Martinez, and Megan E. Heinz, for respondent.

[1]Cases of the following petitioners are consolidated herewith:  John E. Rogers and Frances L. Rogers, docket No. 15112-16, and Frances L. Rogers, docket No. 2564-18.

[*2]      MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  We address requests for innocent spouse relief from joint tax liabilities by Frances L. Rogers for 2010 through 2012.  She and her husband, John E. Rogers, filed joint Federal income tax returns for the three years at issue.

The 2010 and 2012 requests for relief originated with petitions filed by the Rogerses in dispute of notices of deficiency for those years, but her innocent spouse requests were bifurcated from the trial of the other issues.  An opinion was issued regarding those issues, Rogers v. Commissioner, T.C. Memo. 2019-90 (Rogers 2010 and 2012).  The case at docket No. 2564-18, brought by Mrs. Rogers under section 6015(e),[2] is based upon her request for innocent spouse relief for 2011.  Respondent issued a notice of deficiency for 2011, but no petition was filed contesting respondent's determination, and the tax liabilities and penalties were assessed.  Mr. Rogers supports Mrs. Rogers' request for relief for all three years.

The two issues before us are whether Mrs. Rogers is entitled to relief from joint and several liability under section 6015(b) and if not, whether she should be

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All amounts are rounded to the nearest dollar.

**[*3]** granted relief under section 6015(f).  We determine herein that Mrs. Rogers is not entitled to relief for any of the three years at issue.[3]

FINDINGS OF FACT

Mrs. Rogers was a resident of Illinois when the petitions were filed.  The record for this trial included 10 separate sets of stipulations of fact with attached exhibits and the testimony of several witnesses.

The Rogerses have been married for over 50 years, and they were both 78 years old at the time of trial.  They have shared residences all the years of their marriage.  They have been and remain devoted to each other.  Mr. Rogers has not abused Mrs. Rogers, and the stress in their marriage was caused primarily by health issues and Mr. Rogers' problems with alcohol, which he controlled by 2010. Throughout their marriage Mrs. Rogers has been proud of and confident in Mr. Rogers' ability as a tax lawyer.  Despite repeated setbacks in tax litigation involving their personal taxes and Mr. Rogers' tax strategies for his clients, Mrs. Rogers remained confident that Mr. Rogers' tax positions were correct, without any reasonable basis for that reliance.

---

[3]We previously addressed claims by Mrs. Rogers for relief from joint liability for prior years, but those opinions have no bearing on the present controversy.  See Rogers v. Commissioner, T.C. Memo. 2018-53; Rogers v. Commissioner, T.C. Memo. 2017-130, aff'd, 908 F.3d 1094 (7th Cir. 2018).

**[*4]** Mrs. Rogers is a very intelligent person with a zest for learning and intellectual pursuits. She graduated from the College of St. Francis with a bachelor of science degree in chemistry in 1963, followed by a master's degree in biochemistry in 1965 from Purdue University. She obtained a real estate license in 1967 and has retained it. She obtained a master of business administration degree from Northern Illinois University in 1975 and a doctorate in educational administration from that institution in 1981. In 1990 she obtained a law degree from Villanova University, and she has been a member of the Illinois Bar since 1991. She obtained most of these degrees while being the mother of a son born in 1968 and also being employed first as a teacher in a Chicago suburban high school and later as an administrator at John Hersey High School from 1990 until 2005 when she retired. In 2011, 2012, and 2013 she took classes in areas related to her work as the administrator of Mr. Rogers' law firm including the use of spreadsheets. She has represented clients in property tax disputes since 2009, and during the years at issue she sold real estate as an agent and handled real estate closings as a lawyer. Independent of Mr. Rogers, she is a very accomplished person.

[*5] The background of the Internal Revenue Service (IRS) determinations of liabilities against the Rogerses is described in Rogers 2010 and 2012. We will not repeat it here.

Mr. Rogers is a career tax attorney who developed aggressive tax-advantaged transactions over two decades. His strategies have been consistently rejected by this Court and the Court of Appeals for the Seventh Circuit. See, e.g., Sugarloaf Fund, LLC v. Commissioner, T.C. Memo. 2018-181, aff'd, 953 F.3d 439 (7th Cir. 2020). In addition to the Rogerses' joint tax returns he prepared the returns for the entities reported on the joint returns. Mrs. Rogers reviewed the joint returns but not the passthrough entity returns.

Mrs. Rogers began to take an active role in Mr. Rogers' law firm in 2009 at Mr. Rogers' request. They communicated freely about the law practice and their other business ventures and discussed their tax returns. Mrs. Rogers was not precluded from asking any questions she had about the returns. She became the primary office manager of the law firm in 2009 when the prior longtime manager was fired. She was respected by Mr. Rogers' associates and came to understand and manage both the law practice and the passthrough business entities reported on their joint income tax returns. Her skills were critical to maintaining the firm

**[*6]** when Mr. Rogers sought medical care for himself regarding his physical state and alcoholism in April 2009.

Mr. Rogers suffers from alcoholism. By 2009 he was drinking at his law office, and on April 7, 2009, he missed a court call and checked himself into the Northwestern Memorial Hospital. He was later treated at the Mayo Clinic. After this crisis, Mrs. Rogers carried the management responsibility for the law firm, but she subsequently suffered from weight loss and depression and was treated for those conditions. She continues to take medication for depression to the present. She also suffered stress related to her son's divorce but enjoys a loving devotion to her granddaughter.

The Rogerses did not have an extravagant lifestyle. They did provide significant funds to their son for his entire adult life through the years at issue. They also traveled together on occasion including some trips related to Mr. Rogers' work and American Bar Association (ABA) tax meetings. Mrs. Rogers attended some of the meetings regarding Mr. Rogers' tax strategies and consistently supported him in person at related trials in this and other courts.

Mrs. Rogers submitted Form 8857, Request for Innocent Spouse Relief, to the IRS requesting innocent spouse relief for 2011 in September 2014. This relief

**[*7]** was denied, and she timely sought review of that denial in her petition to this Court.

On Form 8857, question 18 asks: "For the years you want relief, how were you involved in the household finances?" Mrs. Rogers checked the box indicating that she made decisions about how money was spent. She also wrote: "I did not understand how to read a credit card or bank statement until my husband was suddenly hospitalized from growing depression in 2009, when I was immediately faced with these matters."

On Form 8857 Mrs. Rogers reported $8,175,000 as the total fair market value (FMV) of her personal assets, which she listed as follows:

| Description of asset | FMV | Balance of any outstanding loans |
|---|---|---|
| Sterling Ridge, Inc. | $2,000,000 | None. Inherited. |
| Oak Pointe farm | 3,000,000 | None. Inherited. |
| Bank accounts | 1,500,000 | None. Personal savings. |
| Individual retirement account | 400,000 | None. Personal savings. |
| 162 Abingdon Ave., Kenilworth, IL | 900,000 | None. |
| 2525 Gross Point Rd., Evanston, IL | 375,000 | None. |
| Total | 8,175,000 | |

[*8]    On Form 8857 Mrs. Rogers reported that her total monthly income was

$15,500, which comprised the following sources:

| Income source | Amount |
|---|---|
| Pensions | $10,500 |
| Social Security | 2,400 |
| Interest and dividends | 2,600 |
| Total monthly income | 15,500 |

On Form 8857 Mrs. Rogers reported that her monthly expenses totaled

$13,242, which she listed as follows:

| Expense item | Amount |
|---|---|
| Food | $1,000 |
| Housekeeping supplies | 100 |
| Clothing and clothing services | 100 |
| Personal care products | 150 |
| Auto loan/lease payment, gas | 200 |
| Real estate taxes and insurance | 2,667 |
| Electric, oil, gas, water, trash | 300 |
| Telephone and cell phone | 500 |
| Cable and internet | 275 |
| Health insurance premiums | 200 |
| Out-of-pocket expenses | 500 |
| Child and dependent care | 2,250 |

[*9]

| | |
|---|---|
| Unpaid State and local taxes | 5,000 |
| Total monthly expenses | 13,242 |

The Rogerses followed a yearly routine to prepare their returns. As part of this routine, Mr. Rogers would start preparing the tax returns around "Christmas time". Mrs. Rogers was responsible for acquiring the latest Turbo Tax accounting software from Staples at the instruction of Mr. Rogers, and they went through the tax returns together after Mr. Rogers prepared them. When reviewing their returns, Mrs. Rogers wanted to know how much money she and Mr. Rogers had made that year and whether they had done well.

From 2002 through 2012 the Rogerses had joint bank accounts. For 2002 through 2012 Mrs. Rogers paid household bills from those accounts. For 2002 through 2012 Mrs. Rogers made deposits into both the joint bank accounts and her separate bank accounts. She paid bills for her family's various businesses out of her separate bank accounts.

During 2010, 2011, and 2012 Mrs. Rogers paid the bills for the expenses reported on Schedules C1 and C2, Profit or Loss From Business, of the joint tax returns. During 2010, 2011, and 2012 Mrs. Rogers had access to business accounts for Rogers & Associates, Portfolio Properties, Inc. (PPI), and Sterling Ridge, Inc. (SRI), to pay the bills. She also opened the household mail.

[*10] On July 30, 2010, Mrs. Rogers attended a meeting with Mr. Rogers to discuss the status of the ALAS and Seyfarth litigation. On October 12, 2010, Mrs. Rogers attended a meeting with Mr. Rogers regarding settlement discussions related to the ALAS and Seyfarth litigation. This litigation related to Mr. Rogers' separation from the Seyfarth law firm in years before those at issue and client claims based upon his representation.

After 2009 Mrs. Rogers continued to accompany Mr. Rogers on business trips. She traveled with him to Toronto, Ontario, from September 23 to 25, 2010. She flew to Florida on three separate occasions to accompany him regarding a litigation matter involving a bankruptcy case. She sat with him during the bankruptcy proceedings held while they were on those trips. She also supported him in a paralegal capacity during trials in this Court involving the Sugarloaf Fund and their personal tax deficiencies.

Mrs. Rogers attended several ABA tax meetings with Mr. Rogers. In 2010 she attended an ABA tax meeting with him held in New Orleans, Louisiana. During the years at issue she attended an ABA tax meeting with him held in Denver, Colorado.

Mrs. Rogers owned an approximately 31-acre parcel of undeveloped real property in Orland Park, Illinois, that she had inherited from her father. She

[*11] transferred it to SRI in 2004. During 2010 through 2012 Mrs. Rogers wholly owned SRI. SRI filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for 2010, 2011, and 2012 on September 12, 2011, October 17, 2012, and September 16, 2013, respectively. Mr. Rogers was president of SRI and prepared its 2010, 2011, and 2012 tax returns. Income flowing from SRI is attributable to Mrs. Rogers.

The Rogerses agreed to partner with Mr. Melka, who owned an adjacent 8.7-acre parcel of land, to develop Orland Park into the Sterling Ridge subdivision. Mrs. Rogers was actively involved in the development of the subdivision, by participating in the design and layout of the residential lots, the park, the ponds, and the design of a model home and by inspecting the installation of the park and the ponds to ensure they met her instructions. Mrs. Rogers was involved in selling the Sterling Ridge subdivision lots.

Mrs. Rogers conducted property tax appeals for various plots in the Sterling Ridge subdivision during the years at issue. Mr. Rogers initially did the closings for the Sterling Ridge lots; but after he showed Mrs. Rogers how to do them, she began doing some of them. Mrs. Rogers became a notary so that she could notarize certain documents needed for the closings for the Sterling Ridge lots.

[*12] In 2008, while at their personal residence, Mrs. Rogers began helping Mr. Rogers with matters pertaining to his law firm, Rogers & Associates, by tracking his clients' bills and depositing client checks into the bank.

Beginning in 2008 and through the end of 2013, Rogers & Associates subleased its office space from another law firm. When Rogers & Associates moved into this office space, Mrs. Rogers helped set up the computers. In 2009 she began operating her property tax appeal business from Rogers & Associates.

On August 10, 2010, Mrs. Rogers received an email from Paul Kozacky regarding fees related to the Sugarloaf Fund litigation, Rogers & Associates' rent payments, and the ALAS litigation. As stated previously, Mrs. Rogers attended the proceedings related to the Sugarloaf Fund litigation to assist Mr. Rogers.

PPI, an entity wholly owned and operated by Mr. Rogers, was involved in building houses on lots in the Sterling Ridge subdivision. In 2010 Jetstream Business, Ltd. (Jetstream), was a domestic C corporation incorporated in Delaware. PPI was the sole shareholder of Jetstream. PPI timely filed Forms 1120S for the tax years 2010, 2011, and 2012 on September 15, 2011 and 2012, and September 16, 2013, respectively. Mr. Rogers prepared PPI's 2010, 2011, and 2012 returns.

[*13] Mrs. Rogers' duties as office manager involved doing PPI's payroll and getting money to pay that payroll. She had access to PPI's payroll and was aware that her son's salary came from PPI's payroll. Invoices issued to PPI were paid from the Rogerses' joint checking account held at Bank of America.

Lucas & Rogers Capital, Inc. (Lucas & Rogers), was incorporated on July 23, 1980. Lucas & Rogers was a C corporation for taxable years before 2003. For taxable years 2003 and after, Lucas & Rogers elected S corporation status.

Mrs. Rogers held her real estate license at Lucas & Rogers. As secretary of Lucas & Rogers, she signed a deed in which Lucas & Rogers Properties, by and through its general partner Lucas & Rogers, conveyed real property located at 17407 South 67th Court, Tinley Park, IL 60477 to Tinley Ventures, Ltd.

OPINION

In the case of joint income tax return filers, section 6013(d)(3) provides for joint and several liability. Section 6015 provides a regime for a joint filer to seek relief from that joint and several liability. Mrs. Rogers seeks relief under subsections (b) and (f). The pertinent provisions of section 6015(b)(1) are:

> (B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

**[\*14]**          (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement;

Section 6015(f)(1) provides for a determination "[u]nder procedures prescribed by the Secretary" that "taking into account all the facts and circumstances, it is inequitable to hold the individual liable".

The parties agree that the evidence taken at trial in this bifurcated trial was "previously unavailable" in the administrative record and these cases are subject to de novo review.  Sec. 6015(e)(7).

As the statute provides, the IRS on behalf of the Secretary has issued Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, which provides a rubric for application of section 6015(f).  While there is some significant overlap in the application of subsections (b) and (f), the scope of subsection (b) is defined to include only items attributable to Mr. Rogers.  Given Mrs. Rogers' involvement in Mr. Rogers' legal practice, respondent contests whether the items related to the legal practice, including the Sugarloaf Fund and Jetstream, are solely attributable to Mr. Rogers.  We find that Mrs. Rogers has the better side of this factual argument, but this dispute has no

**[*15]** effect on the outcome because the application of section 6015(b)(1)(C) and (D) does not support any relief.

As previously stated, the Secretary has set forth procedures for granting equitable relief under section 6015(f). Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. at 399-403, sets forth a three-step procedure for evaluating requests for innocent spouse relief: (1) section 4.01 lists seven threshold conditions that a requesting spouse must satisfy to be eligible for relief; (2) section 4.02 sets out a three-part test for a streamlined determination to grant relief; and (3) if the taxpayer is not entitled to a streamlined determination, section 4.03 sets out a nonexclusive list of factors that the IRS will consider in determining whether it would be inequitable to hold the spouse jointly and severally liable.

Mrs. Rogers must satisfy the threshold conditions in Rev. Proc. 2013-34, sec. 4.01: (1) the requesting spouse filed a joint return for the taxable year for which she seeks relief; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) with enumerated exceptions, the income tax

**[*16]** liability from which the requesting spouse seeks relief is attributable (in full or in part) to an item of the nonrequesting spouse. Respondent concedes that Mrs. Rogers meets the conditions of section 4.01(1), (2), and (3).

However, section 4.01(4) and (5) requires an examination into whether assets have been transferred between the requesting and nonrequesting spouse. The record indicates that as early as 1995 Mr. Rogers began the practice of placing all assets and funds in Mrs. Rogers' name. The record supports this indication, as Mrs. Rogers' Form 8857 lists among her property their personal residence and SRI's remaining unsold lots as well as her access to substantial bank account funds.

In addition, the most recent showing of Mrs. Rogers' continued efforts to transfer funds out of the Rogerses' names was on November 23, 2018 (after the filing of her innocent spouse claim), when she transferred the beneficial interest of her Oak Pointe farm to a trust in her son's name, the John L. Rogers Trust, of which she is the trustee. Mrs. Rogers claims that when her son was 10 years old, her father told her that he wished for Oak Pointe to be transferred to her son when the son turned 50, which was in November 2018. Regardless, Mr. and Mrs. Rogers have placed all her assets in her name and have begun to place some of their assets in her son's name. If Mrs. Rogers is granted innocent spouse relief,

**[*17]** then she and Mr. Rogers have effectively hindered possible collection avenues since all their assets are in her name only and potentially all could be eventually transferred to trusts under the names of her son and/or granddaughter.

Section 4.01(7) requires in these cases that the requesting spouse be seeking relief in relation to an item of income attributable (in full or in part) to the nonrequesting spouse. Income flowing from SRI is attributable to Mrs. Rogers for the years at issue and is therefore not an item considered in relation to relief under this section. Section 4.01(7) sets out many exceptions to the attribution rule. The only exception Mrs. Rogers has raised is an abuse claim, which is unsupported by the facts.

Rev. Proc. 2013-34, sec. 4.03 sets out a list of nonexclusive factors that may be considered in determining a requesting spouse's eligibility for relief. Those factors are: (1) marital status, (2) economic hardship, (3) knowledge or reason to know, (4) legal obligation by either the requesting spouse or the nonrequesting spouse to pay the Federal income tax liability, (5) significant benefit, (6) compliance with Federal income tax laws, and (7) mental or physical health issues. No single factor is determinative, and all factors shall be considered and weighted appropriately. Id.; see Pullins v. Commissioner, 136 T.C. 432, 448 (2011). The Court may choose to assign varying weight to each factor or to

**[*18]** include other factors depending on the specific facts and circumstances of each case. See Hall v. Commissioner, T.C. Memo. 2014-171, at *38. We find that subsequent compliance with Federal income tax filing requirements is the only factor clearly supportive of Mrs. Rogers, as we will explain.

As is often the circumstance in so-called innocent spouse cases, Mrs. Rogers' knowledge of the erroneous items on the joint income tax returns is of special importance. See, e.g., Greer v. Commissioner, T.C. Memo. 2009-20, aff'd, 595 F.3d 338 (6th Cir. 2010). Her position on that point is succinctly summarized in her reply brief:

> Contrary to Respondent's version of the facts, these cases involve an unfortunate situation where John, an experienced tax attorney, engaged in a variety of activities that led to substantial tax reporting errors to the extreme detriment of Frances, a retired educator who reasonably relied on John and had no reason to second-guess John's tax reporting positions. Frances repeatedly sought assurances from John that he was reporting all items correctly, fulfilling her required duties as a taxpayer and joint signor of the returns. Frances "felt like * * * [she] was hiring * * * [John] like anybody would hire a tax lawyer." She trusted and reasonably expected John to prepare accurate tax returns. * * * Frances had no actual knowledge of any understatements of tax, and she had no reason to know of such understatements.

We agree this situation is unfortunate, but the facts and Mrs. Rogers' own testimony are inconsistent with her factual summary. Mrs. Rogers was well aware that in 2011 they lost their case in this Court regarding 2003 joint tax liabilities.

**[\*19]** <u>Rogers v. Commissioner</u>, T.C. Memo. 2011-277, <u>aff'd</u>, 728 F.3d 673 (7th Cir. 2013). Nevertheless, she testified, "I figured that at some point he'd win."

Mrs. Rogers maintained control of the home and office banking in the years at issue. She monitored and wrote checks related to the litigation which flowed from Mr. Rogers' tax advice and related pass-through entities such as Jetstream and the Sugarloaf Fund.

The relentless IRS attack on the tax shelters Mr. Rogers promoted also should not have been lost on Mrs. Rogers. She should have know further investigation was required. <u>See</u> <u>Hopkins v. Commissioner</u>, 121 T.C. 73, 77-78 (2003). Ultimately these failed tax schemes have increased the Rogerses' joint tax liabilities, and Mrs. Rogers clearly must have suspected what was coming. Early in the years at issue a grand jury subpoena was served at their home, and she had sat through months of trials involving Mr. Rogers' tax schemes and her own joint liabilities during the preceding decade. She was also aware of his dispute with his former law firm and the litigation related to client suits about his failed advice. The recent Court of Appeals opinion in <u>Sugarloaf Fund</u> summarized the history of Mr. Rogers' defense of his tax schemes litigation:

> The Internal Revenue Service, Tax Court, and now our court have devoted substantial resources over multiple proceedings to deciphering foreign and domestic transactions, understanding

**[*20]** complex tax structures, and separating the fair from the fraud. None of this has gone well for Rogers or his partnership, the Sugarloaf Fund. * * *

Sugarloaf Fund, LLC v. Commissioner, 953 F.3d at 441.

Mrs. Rogers was by Mr. Rogers' side every step of that unfortunate, ill-fated journey. She cannot credibly assert she had no reason to know what was coming.

In short, section 6015(b) is not available to provide relief, and the most significant single factor regarding section 6015(f) is also negative to her claim for relief. She likewise finds insufficient support in the other elements of Rev. Proc. 2013-34, supra. Mr. Rogers did not deceive her regarding their Federal tax liabilities or hide the situation from her. She has not shown the result will cause significant economic hardship, and we have found that he did not abuse her. The Rogerses' lifestyle was not extravagant for their means, but they have provided significant funds to their adult son. Weighing all the factors leads us to a denial of relief from liability.

While Mrs. Rogers' blind confidence in her husband evidences her love and devotion, her emotional decision to ignore the facts and circumstances she well knew on an intellectual level is not a lack of knowledge for purposes of section 6015(b)(1)(C) and (D) and (f). We have explained Mrs. Rogers' education and her

**[*21]** thirst for knowledge. Her willingness to set aside her intellect to support Mr. Rogers does not cause her to be eligible for relief from her joint tax liabilities.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155 in docket Nos. 29356-14</u>

<u>and 15112-16</u>.

<u>Decision will be entered for</u>

<u>respondent in docket No. 2564-18</u>.