In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 20-2789, 20-2790, 20-2791, 20-2869, 20-2870, 20-2871,
    20-2872 & 20-2873

FRANCES L. ROGERS,

*Petitioner-Appellant,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

———————————

Appeals from the United States Tax Court.
Nos. 2564-18, 29356-14, 15112-16, 30586-09, 1052-12, 15682-13,
30482-13 & 20910-14.

———————————

SUBMITTED[*] APRIL 12, 2021 — DECIDED AUGUST 17, 2021

———————————

Before BAUER, EASTERBROOK, and SCUDDER, *Circuit Judges.*

———————————

[*] This successive appeal has been submitted to the original panel pursuant to Operating Procedure 6(b). After reviewing the briefs and the record, the panel is unanimously of the view that oral argument is unnecessary. Accordingly, the appeal has been submitted on the briefs and the record alone. See Fed. R. App. P. 34(a).

SCUDDER, *Circuit Judge*. Married since 1967, John and Frances Rogers filed joint federal income tax returns for many years. They underreported their tax obligations many times over, and the misreporting was the product of a fraudulent tax scheme designed by John, a Harvard-trained tax attorney. The fraud did not elude the Internal Revenue Service, though, and the many subsequent collection and enforcement proceedings in the U.S. Tax Court have not gone well for the Rogerses. Our court has affirmed the Tax Court's rulings every time.

Before us now is another appeal by Frances challenging two Tax Court decisions denying her requests for what the Tax Code calls innocent spouse relief. Our review of the record shows that the Tax Court took considerable care assessing Frances's pleas for relief, in the end denying them largely on the basis that she was aware of too many facts and too many warning signs during the relevant tax years to escape financial responsibility for the clear fraud perpetrated on the U.S. Treasury. While the tragedy of what Frances has endured over the years is in no way lost on us, we are left to affirm, for the Tax Court got it right.

## I

### A

The Rogerses have been frequent litigators in both the U.S. Tax Court and our court. John developed and marketed tax shelters that we have since held to be "abusive sham[s]." *Sugarloaf Fund, LLC v. Comm'r*, 911 F.3d 854, 856 (7th Cir. 2018) (*Sugarloaf I*) (citing *Superior Trading, LLC v. Comm'r*, 728 F.3d 676 (7th Cir. 2013)). A part of John's tax schemes involved a "partnership's [Sugarloaf Fund, LLC's] acquisition and

subsequent transfer of highly distressed or uncollectible accounts receivable from retailers located in Brazil. The point of the transfers was to convey interests in the receivables—assets with meaningful face value but no economic value in the hands of the Brazilian retailers—to U.S. taxpayers, who then deem them uncollectible and use the concocted loss to reduce their tax liability." *Sugarloaf Fund, LLC v. Comm'r*, 953 F.3d 439, 440 (7th Cir. 2020) (*Sugarloaf II*).

As the architect of this scheme, John used the tax shelters to underreport his personal income tax obligations. But the IRS eventually caught on to his underpayments and in time litigation ensued. The Tax Court at each turn concluded that John perpetuated fraudulent tax avoidance over the course of multiple tax years, and it thus imposed significant liability on the Rogerses. We have affirmed the Tax Court's decisions on appeal each time.

Because we have discredited John's tax shelter on multiple occasions, we assume familiarity with his schemes and our prior decisions, and we turn to the issues presented in this appeal. See generally *Sugarloaf II*, 953 F.3d 439; *Sugarloaf I*, 911 F.3d 854; *Rogers v. Comm'r*, No. 15-3678 (7th Cir. Nov. 3, 2016); *Superior Trading*, 728 F.3d 676; *Rogers v. Comm'r*, 728 F.3d 673 (7th Cir. 2013).

B

Today's case concerns not John's fraudulent tax scheme, but his wife Frances's liability for the couple's personal income tax deficiencies for the years 2003, 2005 to 2007, and 2009 to 2012. Married couples who file joint tax returns are generally jointly and severally liable for income tax liabilities. See 26 U.S.C. § 6013(d)(3). The Tax Code also provides an

exception—called innocent spouse relief—to protect against the injustice of requiring a spouse, who has no actual and meaningful responsibility for the underpayment, to bear the tax liability alone. See *id.* § 6015. This appeal centers on Frances's ability to take advantage of that exception.

Three years ago, we affirmed the Tax Court's denial of Frances's request for innocent spouse relief for the 2004 tax year. See *Rogers v. Comm'r*, 908 F.3d 1094 (7th Cir. 2018) (*Rogers 2018*). In doing so, we observed that Congress permits innocent spouse relief only if the petitioner has not "participated meaningfully in [the] prior proceeding" during which tax liabilities were resolved. *Id.* at 1096 (quoting 26 U.S.C. § 6015(g)(2)). Because the Tax Court was on solid ground in finding that Frances meaningfully participated in the 2012 Tax Court trial conducted to resolve the Rogerses' disputed tax liability for 2004, she was not entitled to innocent spouse relief. We concluded that the Tax Court committed no clear error in discrediting Frances's contention that she lacked knowledge of business and financial matters and did not understand what was taking placing during the 2012 trial—which she attended in full. See *id.* at 1096–97.

## C

Frances returned to the Tax Court, this time seeking innocent spouse relief for the following tax years: 2003, 2005 to 2007, and 2009 to 2012. The Tax Court denied her relief in two opinions.

1. *April 17, 2018 Tax Court Opinion* (Tax Years 2003, 2005–2007, 2009)

For the tax years 2005 to 2007 and 2009, the Tax Court conducted a bifurcated trial, holding one proceeding to address

the Rogerses' tax deficiencies and a separate one to consider Frances's innocent spouse claims for those years and for the 2003 tax year. In a single opinion, the Tax Court upheld the tax deficiencies and concluded that Frances was not entitled to innocent spouse relief for any of the years at issue.

For 2003 specifically, the Tax Court held that principles of *res judicata* codified in 26 U.S.C. § 6015(g)(2) barred Frances from innocent spouse relief. And for the remaining years, the Tax Court applied 26 U.S.C. § 6015(b) and (f), along with the factors outlined in *Resser v. Commissioner*, 74 F.3d 1528 (7th Cir. 1996), to determine that she knew or had reason to know of the tax understatements in the joint returns she filed with John. The Tax Court further found that Frances's insistence that she lacked any awareness of the underreporting—all a product of John's fraudulent tax schemes—was not credible. Nor did the Tax Court see any inequity in holding Frances liable for the underpayment deficiencies.

2. *June 18, 2020 Tax Court Opinion* (Tax Years 2010–2012)

After the Tax Court upheld deficiencies for the years 2010 to 2012, it held a separate trial to resolve Frances's request for innocent spouse relief for those same years. Unlike the previous trial, during which Frances's husband John represented her, she retained separate counsel from the law firm McDermott Will & Emery LLP. Frances also called nine witnesses to testify on her behalf about her trustworthiness, the marital anguish and challenges she had endured for over a decade, and her involvement in John's law firm and business dealings, among other things. Even with this additional testimony, however, the Tax Court rejected her request for innocent spouse relief largely for the same reasons outlined in its 2018

opinion. The Tax Court also denied Frances's motion for a new trial for the tax years 2003, 2005 to 2007, and 2009.

Frances now appeals these decisions.

## II

### A

For all the tax years at issue, Frances sought innocent spouse relief through two Tax Code provisions: 26 U.S.C. § 6015(b) and § 6015(f).

Section 6015(b) provides relief from joint and several tax liability when the petitioning taxpayer satisfies the following requirements: (1) a joint return was made, (2) there is an understatement of tax attributable to the errors of one individual filing the return, (3) the other individual who filed the return did not know, and had no reason to know, of the understatement at the time of signing the return, (4) it would be inequitable to hold the other individual liable for the deficiency in tax resulting from the understatement, and (5) the other individual elects (on a form prescribed by the Secretary) the relief provided. 26 U.S.C. § 6015(b)(1)(A)–(E). The parties before us here only dispute the Tax Court's analysis of the knowledge and equity prongs.

The second provision, § 6015(f), provides for catch-all relief sounding in equity and states that the Tax Court may relieve one spouse from liability if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)," and "relief is not [otherwise] available." *Id.* § 6015(f)(1)(A)–(B).

In considering the Tax Court's denial of relief, we review its legal conclusions *de novo* and its factual findings for clear error. See *Resser*, 74 F.3d at 1535. Under the clear error standard, we reverse only if we are left "with the definite and firm conviction" that the Tax Court made a mistake. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). And the parties agree that we review the Tax Court's denial of innocent spouse relief under § 6015(f) for abuse of discretion. See *Jacobsen v. Comm'r*, 950 F.3d 414, 419 (7th Cir. 2020) (declining to decide the appropriate standard of review for the denial of equitable relief under § 6015(f)).

B

For the 2003 tax year, the Tax Court concluded that *res judicata* principles barred Frances from innocent spouse relief. Congress permits innocent spouse relief only if the petitioning taxpayer has not "participated meaningfully in [the] prior proceeding." 26 U.S.C. § 6015(g)(2). "In this way," we previously explained, "Congress has implemented a variation of *res judicata* applicable to claims for innocent spouse relief pursued after a prior proceeding has reached finality and resolved a taxpayer's liability." *Rogers 2018*, 908 F.3d at 1096.

Though the Internal Revenue Code does not delineate what constitutes "meaningful participation," courts look to the totality of circumstances to measure the extent of a taxpayer's involvement and engagement in the prior proceeding. See *id.* (citing *Haag v. Shulman*, 683 F.3d 26, 31 (1st Cir. 2012)). Whether Frances meaningfully participated in the 2010 Tax Court trial regarding her and John's tax liability for 2003 is a question of fact, which we review for clear error. See *id.* at 1096 (citing *Freda v. Comm'r*, 656 F.3d 570, 573 (7th Cir. 2011)).

We see no clear error in the Tax Court's finding that Frances meaningfully participated in the tax deficiency trial for the 2003 tax year, in part because she was represented by counsel (her husband John), attended the entire trial, and sat at the table reserved for petitioners and their counsel. Nor can we overlook that Frances—herself the holder of a law degree and an M.B.A.—is highly educated, a fact that adds to the Tax Court's finding that she understood the proceedings and the implications of the court's decision. We also see no clear error in the Tax Court's discrediting of Frances's claim that she had no knowledge of her husband's business activities or the tax shelter he promoted.

In the end, nothing materially distinguishes Frances's arguments today from those she made to us three years ago—when we affirmed the Tax Court's conclusion that § 6015(g)(2)'s version of *res judicata* barred Frances from seeking innocent spouse relief for the 2004 tax year. See *Rogers 2018*, 908 F.3d 1094. We therefore affirm the Tax Court's decision that Frances cannot seek innocent spouse relief for the 2003 tax year.

## C

All of this brings us to the 2005 to 2007 and 2009 to 2012 tax years. In denying Frances innocent spouse relief under § 6015(b) and (f), the Tax Court applied the correct standard, with the possible exception of one factual error in its 2018 opinion regarding the couple's lavish lifestyle. But we are certain that any error was harmless to the ultimate outcome, and the rest of the Tax Court's analysis remains sound.

The only two elements from § 6015(b) at issue are the knowledge and equity prongs. As for the former, the Tax

Court first considered whether Frances knew or had reason to know that there was an understatement on the couple's joint tax returns. When an understatement is a result of unreported income, the test for knowledge is "not knowledge of the tax consequences of a transaction but rather knowledge of the transaction itself." *Resser*, 74 F.3d at 1535 (quoting *Quinn v. Comm'r*, 524 F.2d 617, 626 (7th Cir. 1975)). But to the extent the understatement comes from improper deductions or credits, *Resser* establishes a "reasonably prudent person" test, under which a spouse has "reason to know" if a reasonably prudent person under the circumstances "could be expected to know, at the time of signing the return, that the tax return contained a substantial understatement." *Id.* at 1536 (collecting cases). This standard also imposes a "duty of inquiry" on the party claiming innocent spouse relief. *Id.* at 1541.

Under the reasonably prudent person test, *Resser* identified four factors informing whether the spouse has reason to know of the understatement: (1) the spouse's level of education, (2) the spouse's involvement in the family's financial and business activities, (3) the presence of unusual or lavish expenses beyond the family's norm, and (4) the culpable spouse's evasiveness or deceitfulness about the family's finances. *Id.* at 1536. No single factor controls; rather, the Tax Court as the trier of fact had to consider the "interplay or balance of the factors." *Id.*

1. *Level of Education*

The Tax Court appropriately relied on and indeed emphasized Frances's extensive education in finding her argument—that she had no reason to know of the tax understatements—not credible. Frances holds a master's degree in biochemistry, a law degree, an M.B.A., and a doctorate in

education. The Tax Court saw all of her higher education—particularly the tax courses Frances took in law school—as undercutting the credibility of her argument that she was not capable of understanding complex financial, accounting, and tax concepts. We see no clear error in the Tax Court finding that this factor weighed against innocent spouse relief.

2. *Involvement in the Family's Business and Financial Activities*

Nor did the Tax Court clearly err in discrediting Frances's claims that she had no knowledge or involvement in her husband's businesses or law practice. To the contrary, the record showed that Frances reviewed the couple's joint tax returns each year with John and asked him follow-up questions. For a time, she also assisted in managing her husband's law firm, Rogers & Associates, while he sought treatment for alcoholism in 2009. During that time, she fired the office manager, maintained accounting records, endorsed and deposited checks, and paid expenses. On this evidence, the Tax Court was unwilling to believe that Frances lacked knowledge, or at least a high level of awareness, of her husband's financial affairs.

There is more too. Frances inherited 31 acres of undeveloped land in Orland Park, Illinois, and in 2004 she partnered with her husband and an adjacent property owner to develop the property into a residential subdivision called Sterling Ridge. Frances was actively involved in the subdivision's development, including by participating in its design and layout and assisting with setting sale terms and prices for the lots. To facilitate the project, she formed Sterling Ridge, Inc., an S-corporation, and the Tax Court did not clearly err in finding that Frances knew that John used the new enterprise, among other

entities, to invest and participate in the Sugarloaf tax shelter schemes. What is more, Frances traveled to Brazil with John and attended Sugarloaf Fund–related meetings, and she testified to having understood the basics of the Brazilian receivables transactions at the heart of the tax scheme.

The Tax Court also found that Frances knew, or had every reason to know, that Sterling Ridge sold at meaningful profits plots of land in the neighborhood worth millions but reported losses of over $3.2 million and claimed a $4 million deduction from the Sugarloaf tax shelter. In the end, the Tax Court determined that these facts, too, weighed against Frances's claim for innocent spouse relief. We cannot call the findings clearly erroneous.

### 3. *Standard of Living*

The Tax Court took differing approaches in its 2018 and 2020 decisions on this third factor. In its 2018 decision, the Tax Court found that Frances maintained a high standard of living, and that her extensive travel, purchase of luxury vehicles, and membership at social clubs cut against the granting of innocent spouse relief. This finding may well have reflected clear error, however, because the Tax Court did not—as *Resser* instructs—consider whether these expenses reflected a "substantial unexplained increase in [her] lifestyle." 74 F.3d at 1540. By our view of the record, the Rogerses' standard of living remained consistent during the relevant years, so this factor does not, contrary to the Tax Court's 2018 decision, cut against relief.

But any error here was harmless, in large part because when the Tax Court course corrected in its 2020 opinion, it reached the same conclusion: innocent spouse relief was not

warranted under the circumstances. For the 2010 to 2012 tax years, the Tax Court explained that the Rogerses' occasional travel for John's work and legal conferences, coupled with their providing significant funds to their adult son, did not reflect an extravagant lifestyle. Even though that finding did not weigh against innocent spouse relief, the other factors, taken together, supported a finding that Frances knew or had reason to know of the tax understatements for the years in question.

4. *Evasiveness or Deceitfulness about Family Finances*

Lastly, the Tax Court did not clearly err when it concluded that nothing in the record supported a finding that John tried to deceive or hide anything from Frances. The record supports that Frances had access to the family's financial information and reviewed the tax returns prior to their being filed. As the Tax Court observed in its 2018 opinion, nothing suggests that John concealed any financial dealings or bank accounts from Frances, and she had access to the couple's financial information.

After considering all four factors pertinent to the reasonably prudent person test, we are left confident that the Tax Court did not clearly err in finding that Frances knew or had reason to know of the tax deficiencies for the relevant tax years.

Recall that all five factors in § 6015(b) must be met to warrant innocent spouse relief. For the sake of completeness, the Tax Court also considered the equity prong in § 6015(b)(1)(D), ultimately concluding that there would be no overarching unfairness in holding Frances jointly and severally liable for the tax liability resulting from her and her husband's

underreporting. In doing so, the Tax Court looked to the applicable Treasury Regulation for guidance. One factor the Regulation makes relevant to the equity inquiry is whether the requesting spouse significantly benefitted, either directly or indirectly, from the understatement. See 26 C.F.R. § 1.6015-2(d).

We see no error in the Tax Court's conclusion that equity did not weigh in Frances's favor. The Tax Court pointed to the fact that Frances knew the couple had earned approximately $13 million from the Sterling Ridge subdivision sales, and that John had a salary of $500,000 for 2005 through 2007, yet paid little to no income tax. And she enjoyed a comfortable lifestyle throughout the entirety of the time the couple paid little in income taxes.

### D

Alternatively, a spouse who does not qualify for relief under § 6015(b) may succeed under § 6015(f) if it would be "inequitable" to hold her liable for any deficiency after taking all the facts and circumstances into account. The same reasons that inform our analysis of the equitable prong of § 6015(b) guide our determination here. Having taken our own fresh look at the record, we conclude that the Tax Court did not abuse its discretion in denying Frances relief under this catch-all equity route.

### E

One additional point warrants mentioning. Although *Resser* outlines the legal framework within which we operate and involved a situation where the Tax Court erred in denying innocent spouse relief, Frances's situation is distinguishable from the circumstances presented by Melinda Resser. For

starters, Mrs. Resser signed her tax returns without ever re-viewing them—in stark contrast to Frances's admission that she reviewed her tax returns and asked questions of her hus-band. See *Resser*, 74 F.3d at 1535. Even more, Mrs. Resser merely paid for household expenses and had no involvement in her husband's trading business or his investments. See *id.* at 1537. By contrast, Frances—a lawyer by training who also had an M.B.A.—managed the day-to-day operations of her husband's law firm for about a year and was substantially in-volved in the Sterling Ridge real estate development. We highlight these differences to underscore that *Resser* may sup-ply the operative analytical framework, but it does not man-date a reversal of the Tax Court's opinions in this appeal.

### III

We conclude by addressing Frances's final argument that, at the very least, the Tax Court abused its discretion by deny-ing her a new trial for the tax years 2003, 2005 to 2007, and 2009. See *Estate of Kraus v. Comm'r*, 875 F.2d 597, 602 (7th Cir. 1989). The Tax Court may grant a motion for a new trial for any of the reasons a district court may do so under Federal Rule of Civil Procedure 59(a)(1). See Tax Ct. R. 161; Fed. R. Civ. P. 59(a)(1); see also *Kraus*, 875 F.2d at 602 (explaining de-cisions interpreting Rule 59(a)(1) are authoritative for motions under Tax Rule 161).

Frances based her request for a new trial on what she saw as newly discovered evidence—the nine witnesses who testi-fied on her behalf at the later trial for the 2010 to 2012 tax years. But the fact that the Tax Court denied Frances innocent spouse relief after both trials and for all the tax years—with *and* without the nine witnesses—makes clear that the addi-tional witnesses did not sway the Tax Court. In short, we are

confident that the Tax Court did not abuse its discretion in denying the motion for a new trial, because the newly discovered evidence would not have produced a different result for tax years 2003, 2005 to 2007, or 2009.

Frances also underscores that the reason these nine witnesses were not introduced at the first trial was because John Rogers's representation of her amounted to a conflict of interest. As she puts it, John refused to call witnesses to develop her innocent spouse claim, in part to save himself from embarrassment. But Frances previously gave testimony and represented in an affidavit filed in the Tax Court that, after studying the Model Rules of Professional Conduct and the Commissioner's motion to disqualify John as her attorney, she concluded there was no conflict created by her husband's representation of her during the trial for the 2003, 2005 to 2007, and 2009 tax years. On this record, the alleged conflict is not a sufficient reason to grant a new trial.

\*       \*       \*

We close by commending the Tax Court for its patient, detailed, and thorough analysis each time around. In affirming the Tax Court's opinions, however, we are not oblivious to the marital challenges Frances has suffered for over a decade that she describes at some length in her briefs. Though we are sympathetic to Frances's situation, the challenges she has endured are not, in and of themselves, sufficient to support innocent spouse relief. Rather, our analysis comes by applying the controlling statutory requirements and additional guidance from *Resser*, and seeing no clear error in either Tax Court opinion, we AFFIRM.